In re Randy Scott CUTLER, Debtor.

Lawrence CUTLER, Howard Cutler and Candette Cutler, Plaintiff,

v.

Randy Scott CUTLER and Robert J. Davis, Trustee, Defendants.

Bankruptcy No. 91–11286–PHX–CGC. Adv. No. 92–1350.

United States Bankruptcy Court, D. Arizona.

March 22, 1994.

Edwin P. Lee, Phoenix, AZ, for defendant trustee.

Debra Marcus Watton and Michael J. McGivern, Phoenix, AZ, for plaintiffs Four Seas Inv. Co., Lawrence Cutler, Howard Cutler and Candette Cutler.

## OPINION AND ORDER

CHARLES G. CASE, II, Bankruptcy Judge.

### INTRODUCTION

This case is before the Court on Cross–Motions for Summary Judgment filed by

Lawrence Cutler, Howard Cutler and Candette Cutler ("Cutlers"), on the one hand, and Robert J. Davis, Trustee ("Trustee") for the Chapter 7 estate of Randy Scott Cutler ("Debtor"), on the other. At issue is the complex and often tortuous interaction between the Bankruptcy Code, state partnership law, and a general partnership agreement entered into pursuant to such law. Each motion is granted in part and denied in part.

### FACTS

The Debtor and the Cutlers are siblings. On May 30, 1978, they formed a general partnership called Four Seas Investment Company ("Four Seas") by executing a partnership agreement (the "Agreement"). The assets of Four Seas are parcels of real property bequeathed to the four Cutler siblings by their parents. Some of the real property owned by Four Seas was owned by the Cutler siblings' grandparents and has been in the Cutler family for nearly four decades.

The Agreement contains provisions intended to govern the rights of the partners in certain circumstances, including the bankruptcy, death, disability or withdrawal of one of the partners. The rights are materially different depending on the precipitating event. They include the following:

1. In the event a partner files bankruptcy, paragraph 11 provides that the other partners will have the option, for a stated period of time, to purchase the interests of the debtor partner for an amount equal to the balance of the debtor partner's capital and income accounts at the time the option was exercised.[1]

2. In the event of the death of a partner, paragraph 12.2(a) provides the remaining partners three options:

a. They may continue the partnership with the personal representative of the decedent as a substituted partner;

b. They may purchase the entire interest of the decedent; or

c. They may allow the interest of the decedent partner to be sold to a third party.

If the remaining partners choose to continue the partnership, the substitute partner would have no right to participate in management but would share in the profits and losses of the partnership, provided that he or she would not be obligated for partnership losses which would reduce his or her capital account below the amount at the time of the death of the decedent. If the remaining partners choose to purchase the partnership interest of the deceased partner, the price would be equal to the capital and income accounts of that partner "except that the *book value* of the capital and income accounts shall be adjusted by substituting the *fair market value* as of the date of the decedent's death, in place of book value, of any property and securities owned by the partnership." (emphasis added).

3. In the event of a partner's disability or incompetence, Paragraph 12.3 gives the same rights to the remaining partners as in the event of death.

4. In the event of withdrawal, Paragraph 12.4 gives the remaining partners the same rights as with death or disability, with the proviso that the price payable is to be 87.5% of the fair market value of the withdrawing partner's interest.

Thus, the partners, at the time of formation of the partnership, intended substantially different results in the event of the bankruptcy of one of the partners than in the event of the death, disability or withdrawal of

---

1. Paragraph 11 provides in full: In the event a petition in bankruptcy shall be filed by or against any Partner, or in the event the interest of any Partner in this partnership shall become the subject of a garnishment or attachment proceeding, and in the further event that such petition, or proceeding shall not be quashed and removed within 20 days after filing, service or levy, whichever first occurs, then the other Partners shall have the right and option, within 30 days after

expiration of said 20 day period, to purchase said partnership interest. If the partnership fails to exercise said option within said 30 day period, then the other Partners shall have an additional 15 day period to exercise such option. The purchase price under this Section 11 shall be equivalent to the balance of the capital and income accounts of the encumbered Partner at the time of purchase, and shall be paid in cash within the option period.

one of the partners. Although one can never be sure in these turbulent times, it is safe to assume that the parties believed that the fair market value of the property at a future date would be substantially higher than the "book value" of the assets [2]. While the partners are given three choices in the context of death, disability or withdrawal, there is no choice in the event of bankruptcy, with the apparent intent to yield the least favorable result for the estate of the filing partner and the most favorable result for the remaining partners.

Upon the Debtor's bankruptcy, the Cutlers attempted to exercise the book value "buy-out option," engaging a certified public accountant to determine the balance of the capital and income accounts, less expenses, and tendering a check to the Trustee for $31,814.47, the amount calculated by the accountant. At first, the Trustee seemed inclined to accept this amount and sought Court approval of the disposition of the estate's interest in the partnership in exchange for the payment of $31,814.47. An objection was filed by a creditor, and, at the hearing, the Court denied the Motion without prejudice.

Upon reflection, the Trustee determined that accepting the option price would not be in the best interests of the estate and instead sought to have the underlying assets of the partnership sold, the partnership terminated, and the proceeds divided pro rata among the three remaining partners and the estate. The Cutlers objected and brought this action seeking an order compelling the Trustee to comply with the terms of the "buy-out option" and determining that the estate has no specific interest in the underlying assets of the partnership. The Trustee answered and counterclaimed, seeking an order vesting in the estate an undivided twenty-five percent (25%) interest in each asset of the partnership, thereby in effect allowing the Trustee to force the liquidation of those assets, the

termination of the partnership, and the pro-rata distribution of the proceeds.

## DISCUSSION AND ANALYSIS

■ The resolution of this case turns on the nature of the estate's interest in the general partnership in which the Debtor was a partner prior to his filing a Chapter 7 bankruptcy petition. The Cutlers' view is that the Agreement is an executory contract and that the "buy-out" clause is enforceable under Section 365,[3] that the Trustee's rights are wholly controlled by state partnership law and the Agreement, that the Trustee has no interest in the underlying assets of the partnership, and that the Trustee has no standing to force a liquidation of the partnership and those assets. The Trustee, on the other hand, claims that the "buy-out clause" is void, that the estate is entitled to one-quarter of the profits and interests of the partnership, and that the Trustee has standing to seek a judicial winding-up of the partnership. By this last point, the Trustee means that this Court, upon the Trustee's request, has the authority to force the immediate sale of the real property owned by the partnership, thereby liquidating the partnership's assets for the purpose of distribution, in equal shares to the three remaining partners and the estate.

Despite these seriously conflicting positions, there is much upon which both parties agree. For example, both parties agree that state partnership law defines the "bundle of rights" held by a general partner in a general partnership. Ariz.Rev.Stat.Ann. § 29–224 [4] defines those rights to include

1) A partner's rights in specific partnership property;

2) A partner's interest in the partnership; and

3) A partner's right to participate in the management of the partnership.

Under Arizona law, therefore, both parties agree that the estate, as successor to the

---

**2.** There is no evident dispute that the "book value" of the interest is intended to be calculated pursuant to generally accepted accounting principles; i.e., the lesser of cost or market value less depreciation.

**3.** Alternatively, the Cutlers argue that the Agreement has been rejected by operation of law.

**4.** This section corresponds to Section 24 of the Uniform Partnership Act (U.P.A.).

Debtor, does not have any rights in specific partnership property other than rights arising as a result of tenancy-in-partnership. Further, the Trustee does not seek the right to participate in the management of the partnership, except to the extent that he seeks a winding-up of the partnership pursuant to Ariz.Rev.Stat.Ann. § 29–237 [5]. Both parties agree that the Debtor's interest in the partnership is property of the estate, 11 U.S.C. § 541, and that the Trustee, as representative of the estate, is the party holding that interest. Likewise, the parties do not dispute that some or all aspects of a partnership agreement may have the characteristics of an executory contract which is subject to the strictures of 11 U.S.C. § 365, although the parties have significantly different views as to the significance of Section 365 in this case.

Section 31(5) of the U.P.A., codified in Arizona as Ariz.Rev.Stat.Ann. § 29–231(E), provides that the "bankruptcy" of a general partner causes the dissolution of the partnership.[6] The dissolution of a partnership is not the same as its termination. Rather, the term simply means that the partnership in which the debtor held an interest no longer exists in its former state, and that the affairs of that partnership need to be wound up. The winding up process does not necessarily mean that the assets of the partnership must be liquidated, although that is one option. One common method of "winding up", contemplated by U.P.A. § 41 [7], is the reconstitution of the partnership by the remaining partners with the withdrawn partner retaining an economic but not a management interest in the new partnership.

Thus, upon the filing of this Chapter 7 bankruptcy, the Four Seas partnership was dissolved and the Trustee, as representative of the estate, succeeded to the economic interests of the Debtor in the partnership pursuant to Section 541(a)(1).[8] The nature of that interest is further refined by 11 U.S.C. § 541(c)(1)(B), which provides that the "interests of the debtor in property," (i.e., the Debtor's partnership interest) "becomes property of the estate ... notwithstanding any provision in an agreement ... that is conditioned ... on the commencement of a case under this title ... and that effects ... a forfeiture, modification, or termination of the debtor's interest in property."

It is the duty of the Chapter 7 trustee to "collect and reduce to money the property of the estate for which such trustee serves." 11 U.S.C. § 704(1). As one means of accomplishing this task, the Trustee has the power under Section 363(b)(1) to sell property of the estate out of the ordinary course of business. As stated above, Section 541(c)(1)(B) vests that property, here the partnership interest, in the estate, free and clear of any restriction or modification that is triggered by the Debtor's having filed bankruptcy. Further, Section 363(l) provides that, subject to the provisions of Section 365, the trustee may sell such property "notwithstanding any provision in a contract ... that is conditioned ... on the commencement of a case under this title concerning the debtor ... and that effects ... a forfeiture, modification, or termination of the debtor's interest in such property."

Read together and applied to these facts, these provisions lead to the conclusion that the Trustee has the right and the obligation to liquidate the Debtor's partnership interest and that he may do so notwithstanding any provision in the Agreement which purports to limit or modify that right.

---

**5.** This statute is substantially similar to U.P.A. § 37.

**6.** The issue, sometimes raised in cases with similar fact patterns, whether Chapter 11 reorganization petition is "bankruptcy" within the meaning of this section does not arise in this case since Randy Cutler filed a Chapter 7 petition.

**7.** Ariz.Rev.Stat.Ann. § 29–241.

**8.** Much has been written about whether the "dissolution" provisions of state law conflict with the executory contract provisions of the Bankruptcy Code. *See, e.g.,* Cherkis and King, *Collier Real Estate Transactions and the Bankruptcy Code,* Paragraph 4.07 (Matthew Bender 1992). However, this issue is not important to this case since the Trustee is not seeking to retain management rights in the partnership. In addition, the Trustee has not questioned whether the given effect to the "buy out" clause would violate the automatic stay and the Court therefore does not address that question.

In the only case to consider these issues at the Circuit level, the Tenth Circuit in *In re Manning*, 831 F.2d 205 (10th Cir.1987), came to the same conclusion. *Manning*'s facts are very similar to this case. The Debtor was a general partner in a five-person partnership. After the Debtor filed his Chapter 7, the Trustee brought an action against the partnership and the non-debtor partners seeking authority to sell the real estate of the partnership and to disburse the net proceeds among the four remaining partners and the estate. The non-debtor partners objected, contending that the Trustee had the right to sell only the Debtor's interest in the partnership and that the non-debtor partners had the right to purchase that interest in accordance with the terms of the partnership agreement. That agreement, like the one at issue here, contained a special "buy-out clause" authorizing the purchase of the Debtor's interest for an amount equal to 75% of the value of his capital account in the partnership.[9] The Tenth Circuit stated

> Sections 541(c) and 363(*l*) protect, respectively, the debtor's interest in and the trustee's right to sell property of the estate "notwithstanding any provision" that is "conditioned" on bankruptcy proceeding and that effects a modification or forfeiture of the debtor's interest in the property. We note that the 25% discount imposed on the amount payable would seem to effect a least a "modification" of the debtor's property of the estate, which is illegal under both these sections. Furthermore, valuing the bankrupt's interest, not at appreciated fair market value, as is typically done upon the death or incompetency of partner, but at book value produces not only a modification but also the added effect of requiring Manning to virtually forfeit his interest in

his tenancy-in-partnership, which would seem to be equally repugnant under the two sections cited.

*Id.* at 211. Here, the Agreement's clear modification of the debtor's interest in the partnership is expressly conditioned on bankruptcy. As in *Manning*, that modification becomes potentially punitive to the point of forfeiture because of the book value limitation put on the valuation of the interest.

This result is consistent with the Ninth Circuit's interpretation of Section 541(c)(1) in *In re Farmers Markets, Inc.*, 792 F.2d 1400 (9th Cir.1986). There, the Court noted that while Section 541(c)(2) did not invalidate a provision of state law requiring that sales taxes be paid as a condition of transferring a liquor license from the estate to a third party, it would invalidate a restriction that would prohibit transfer of the license *from* the debtor *to* the estate. That is precisely what is at issue here: if the "buy-out" clause were to be given effect, the interest of the debtor in the partnership that transferred to the estate would be materially different from that interest when in the Debtor's hands. For example, Randy Cutler, pre-bankruptcy, would have been free to assign the interest as collateral for a loan, sell his economic interest for cash[10] or to withdraw from the partnership and be paid 87.5% of the fair market value of the interest. The "buy-out clause" reduces the estate's options to one: sale to the remaining partners at a predetermined bargain price. This is precisely the type of "modification" or "forfeiture" that Section 541(c)(1) was intended to prevent.[11]

 The Cutlers argue that Section 365(e)(2)(A) compels a different result. The courts have generally assumed that partnership agreements are, at least in part, execu-

---

**9.** The Tenth Circuit found that the "buy-out" provision was ambiguous in that it was not clear that the actual event of filing bankruptcy would trigger its operation. It remanded to the Bankruptcy Court for the purpose of taking extrinsic evidence on the intent of the parties with regard to this crucial issue. In the case at bar, however, there is no such ambiguity. The buy-out provisions of the agreement are explicitly triggered by the filing of bankruptcy and the Court finds that there is no need for additional evidence on this point.

**10.** A.R.S. § 29–227, Section 27 of the U.P.A., allows assignment of the economic interest of a partner. There is no provision in the Agreement which purports to restrict that right.

**11.** Cases which uphold restrictive agreements involving stock transfers of closely held corporations or rights of first refusal of partnership property are not applicable since the restrictions upheld apply *equally* to the debtor as to the trustee. *See, e.g., In re Todd*, 118 B.R. 432 (Bankr.D.S.C.1989); *In re Baquet*, 61 B.R. 495 (Bankr.D.Mont.1986).

**280**

tory contracts.[12] The issue presented by the Cutlers is whether the Trustee can assume the contract, thereby succeeding to the Debtor's rights in all respects, and/or assign that interest to a third party. If not, the Cutlers argue, the "buy-out clause" should be held to be enforceable.

Section 365(e)(1) generally invalidates an "ipso facto" clause, i.e., a clause which modifies or terminates the rights of the trustee, as successor to the debtor, as a result of the debtor's bankruptcy filing. Section 365(e)(2)(A), however, carves out from the general effect of Section 365(e)(1) those kinds of contracts where "applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to the trustee or to an assignee of such contract ... and where such party does not consent to such assumption or assignment." The Cutlers argue, and the Court agrees, that the relationship among partners, and the provisions of the Uniform Partnership Act, fit within the parameters of Section 365(e)(2) and therefore such restrictions are enforceable to the extent the relationship is an executory contract.

However, unlike the Court in *In re Catron*, 158 B.R. 629 (Bankr.E.D.Va.1993), heavily relied upon by the Cutlers, this Court believes that the Section 365(e)(1) and (2) inquiry is not dispositive of the issue. Stripped to its essence, those two sections, read together, mean that a trustee's rights under an executory contract may be terminated or modified as a result of the bankruptcy, so long as the contract is of the type where applicable law allows the non-debtor party to refuse to accept performance from a stranger. Since partnership is a wholly voluntary association, requiring the consent of all partners for the partnership to continue, a partnership agreement fits these criteria.

However, this generalized validation of ipso facto clauses in the executory contract context contrasts sharply with the specific invalidation of such provisions where the Code deals in Sections 541 and 363(*l*) with the scope of and trustee's right to sell prop-erty interests of the estate. Thus, while the application of executory contract principles may make sense in connection with management issues, it does not make sense in the definition of property interests.

The Court agrees with the analysis in a leading treatise, which suggests that the partnership relationship be viewed as an amalgam

 (1) a property interest in the profits and surplus of the partnership, with the property interest surviving any termination of the agreement upon the partner's bankruptcy; and

 (2) an executory contract with respect to the governance of the partnership property.

If courts that have determined to enforce bankruptcy termination provisions in partnership agreements were to adopt this view, they would apply section 365 to the executory contract elements of the agreement, but would not affect the original grant to the debtor of its economic interest in the partnership nor the trustee's continuing economic rights in the partnership and its property. The continuation of the trustee's economic interest in the partnership would render inapplicable any involuntary buy-out provisions, and obviate the need for a determination as to whether a particular buy-out price is fair.

Cherkis & King, *Collier Real Estate Transactions and the Bankruptcy Code*, ¶ 4.07[1], pp. 4–72.3–73 (Matthew Bender 1992). *See also In re Priestly*, 93 B.R. 253 (Bankr. D.N.M.1988).

Therefore, the Court holds that the Debtor's one-quarter interest in the profits and surplus of the Four Seas partnership is property of the estate and may be sold by the Trustee, free and clear of the restrictions contained in the "buy-out clause."

The Trustee, however, wants more. While claiming that he is not asking to succeed to any management rights of the Debtor, he nevertheless seeks to compel the liquidation of the underlying assets of the partnership

---

12. *See, e.g., In re Safren*, 65 B.R. 566 (Bankr. C.D.Cal.1986); *In re Norquist*, 43 B.R. 224 (Bankr.E.D.Wash.1984).

and a distribution of all of the proceeds, with the resulting termination of the partnership. A right of this nature usually lies uniquely with a partner and not with an outsider.

While the Trustee does not claim that his authority to compel liquidation of the partnership assets derives from Section 363(h), an examination of that provision is instructive. Section 363(h) provides that the Trustee may sell both the estate's interest and the interest of a co-owner in property under certain limited circumstances. The Trustee sought to invoke this provision in the *Manning* case. The Tenth Circuit held, and this Court agrees, that Section 363(h) was inapplicable because the estate's property was the partnership interest, not the real estate owned by the partnership. The only interest of the partners in the partnership property is as "tenants-in-partnership;" that interest is not sufficiently specific to the underlying property to trigger the application of Section 363(h).

■ The Trustee in this case, however, has focused instead upon what he believes his state law rights to be, relying upon Ariz.Rev. Stat.Ann. § 29–237. That statute provides, "Unless otherwise agreed the partners who have not wrongfully dissolved the partnership or the legal representative of the last surviving partner, not bankrupt, has the right to wind up the partnership affairs; *provided, however, that any partner, his legal representative or his assignee, upon cause shown, may obtain winding-up by the court.*" (emphasis added). As the holder of the Debtor's economic interest in the partnership, the Trustee claims that he is the Debtor's "assignee" within the meaning of A.R.S § 29–237 and that, therefore, he is entitled to "winding-up by the Court," presuming he can show cause.

It is this Court's view that the Trustee is not an assignee, as that term is used in Ariz.Rev.Stat.Ann. § 29–237. Further, even if the Trustee could be viewed as an assignee, the Court does not believe he has shown or can show cause why the assets of the partnership should be sold and that the partnership terminated.

Ariz.Rev.Stat.Ann. § 29–227 (Section 27 of the U.P.A.) deals with the assignment of a partner's interest in the partnership. That section provides:

A conveyance by a partner of his interest in the partnership does not of itself dissolve the partnership, nor, as against the other partners in the absence of agreement, entitle the assignee, during the continuance of the partnership, to interfere in the management or administrative of the partnership business or affairs or to require any information or account of partnership transactions, or to inspect the partnership books; but it merely entitled the assignee to receive in accordance with his contract the profits to which the assigning partner would otherwise be entitled.

Ariz.Rev.Stat.Ann. § 29–227 is designed to deal with voluntary transfers, such as an assignment given as security for a debt, or an assignment in consideration for the transfer of property to the assignor, or an assignment in satisfaction of an antecedent debt. This consensual nature of assignments is underscored by the language "a conveyance by a partner" and is meaningful when juxtaposed with Ariz.Rev.Stat.Ann. § 29–228, the section under which a partner's interest may *involuntarily* become subject to a charging order in favor of a judgment creditor. Further, Ariz.Rev.Stat.Ann. § 29–231 makes clear that the bankruptcy of a partner does dissolve the partnership, while the same is not true with the assignment of a partner's interest.

■ Read as a whole, therefore, the U.P.A. does not contemplate that a trustee in bankruptcy, as the holder of the estate's interest in the debtor's interest in the partnership, becomes an "assignee" for purposes of Ariz.Rev.Stat.Ann. § 29–237. The Supreme Court of Washington, while not construing this provision of the U.P.A., came to the same conclusion in *Stickney v. Kerry*, 55 Wash.2d 535, 348 P.2d 655 (1960), where it said

It is true that, as the plaintiff says, while the filing of a petition in bankruptcy works an immediate dissolution of the partnership, the trustee in bankruptcy does not acquire jurisdiction of the partnership

property for purposes of winding-up the partnership affairs if one or more of the partners is solvent. That the partner or partners who wind-up the business, and account for the property, have no right to distribute any part of the interests of the bankruptcy partner, once the partnership liabilities have been paid and that interest determined. The Supreme Court of the United States has made this clear: "Bankruptcy, it is said, when decreed by a competent tribunal, dissolves the copartnership, but the joint property remains in the hands of the solvent partner or partners, clothed with a trust to be applied by him or them to the discharge of the partnership obligations and to account to the bankruptcy partner or his assignees for a share of the surplus. *Amsinck v. Bean,* 22 Wall. 395, 89 U.S. 395, 22 L.Ed. 801 [1874]. 55 Wash.2d at 537–38, 348 P.2d at 656–657. To allow the Trustee to liquidate the underlying assets of the partnership would be to grant to him management prerogatives where he has none. To have such management prerogatives, the Trustee would have needed to assume the contract. That is not possible in this case for two reasons:

1) This is a Chapter 7 case and 60 days have passed since the Order for relief, thereby causing automatic rejection Section 365(d)(1); and

2) Section 365(c)(1) would prohibit assumption by the Trustee of the management function for the same reasons as set forth in the discussion of Section 365(e)(2) above.

The interest of the Trustee in the Debtor's interest in the partnership is not unlike that of a creditor with a charging order. The trustee is entitled to receive his full one-quarter share of all surplus and profits, if and when such surplus and profits are realized. The remaining partners are free to re-form the partnership and to continue it in business and to manage the business consistent with their fiduciary obligations. At such time as there may be surplus and profits from the operation of the partnership, from whatever source, including liquidation of the underlying assets, the Trustee is entitled to receive the estate's one-quarter share at the same time and upon the same terms as each of the Cutlers. In the meantime, the Trustee is free, pursuant to Section 363(*l* ), to sell the estate's interest to the highest bidder. Given the nature of the partnership, the highest bidder(s) may be the Cutlers, but that is not necessarily so. It is not inconceivable that a third party, based upon an examination of the economic viability of the underlying assets of the partnership, would wish to buy the right to receive distributions at a future time from those assets, based upon such buyer's determination that the projected future proceeds would yield a satisfactory internal rate of return on the investment to justify the cash investment to date.

That choice belongs to the Trustee and, once made, is to be executed pursuant to Section 363. Any agreement made with the Cutlers or a third party will be subject to the receipt of higher or better offers, if such may be received, at a sale supervised by the Court.

**THEREFORE, IT IS ORDERED:**

1. Granting the Motion for Summary Judgment of the Trustee, in part, and denying the same, in part;

2. Granting the Motion for Summary Judgment of the Cutlers in part, and denying the same in part;

3. Declaring that Paragraph 11 of the Four Seas Partnership Agreement is unenforceable;

4. Declaring that the Estate does not have an interest in the underlying assets of the Four Seas Partnership;

5. Declaring that the Trustee does not have standing to pursue the winding up of the Four Seas partnership;

6. Authorizing the Trustee to sell the estate's interest in the Four Seas partnership pursuant to Section 363, notwithstanding the restrictions of Paragraph 11 of the Agreement.