**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: NORMAN W. SHEARIN, JR.;
ANN SHEARIN,*
<u>Debtors.</u>

STEPHEN L. BEAMAN, Trustee,                    No. 98-2566
<u>Plaintiff-Appellee,</u>

v.

VANDEVENTER BLACK, LLP,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, Senior District Judge.
(CA-98-459-5-BR-2, BK-96-3403-8-L, AP-97-39-8-L)

Argued: April 7, 1999

Decided: August 17, 2000

Before WIDENER, MURNAGHAN, and WILKINS, Circuit Judges.

_____

Affirmed by published opinion. Judge Widener wrote the opinion, in
which Judge Murnaghan concurred. Judge Wilkins wrote a concur-
ring and dissenting opinion.

_____

*Mrs. Shearin's name appears in some of the papers as Anne.

**COUNSEL**

**ARGUED:** Norman Wilson Shearin, Jr., VANDEVENTER BLACK, L.L.P., Kitty Hawk, North Carolina, for Appellant. Charlene Boykin King, BEAMAN & KING, P.A., Wilson, North Carolina, for Appellee. **ON BRIEF:** Michael P. Cotter, VANDEVENTER BLACK, L.L.P., Kitty Hawk, North Carolina, for Appellant. Stephen L. Beaman, BEAMAN & KING, P.A., Wilson, North Carolina, for Appellee.

_____

**OPINION**

WIDENER, Circuit Judge:

Defendant, Vandeventer, Black, Meredith & Martin, L.L.P. (Vandeventer), appeals the district court's judgment affirming the bankruptcy court's order for turnover of funds to plaintiff, Stephen Beaman (the Trustee) in the matter of Norman Shearin, Jr. and Ann Shearin's Chapter 7 bankruptcy. The fund in the amount of $28,844.10 represents Shearin's capital account as an equity partner of the law firm, and the fund in the amount of $52,133.64 represents a portion of year-end profits distributed to him attributable to pre-petition work. We affirm.[1]

I.

We incorporate, as may apply here, the statement of facts from the related case, Shearin v. Beaman, No. 98-2191, today decided. We also follow that decision as it may apply here.

Additionally, the following facts are relevant in this adversary proceeding. After Shearin filed his petition in bankruptcy on July 12, 1996, the Trustee initially wrote the law firm on August 13, 1996.[2]

_____

[1] The argument that the bankruptcy court had no jurisdiction is without merit.

[2] This inquiry occurred after the Trustee had hand delivered to Shearin's attorney a request for "[c]opies of any contracts, partnership agreements, or otherwise, that he has with his present law firm."

2

The Trustee requested information from the firm's managing partner regarding Shearin's partnership interests, along with any documents to assist him in the administration of the bankrupt estate. The firm promptly replied via letter on August 20, 1996 and denied that Shearin had any interest in undistributed profits of the law firm on July 12, 1996 "because there were no undistributed profits as of that date." In this same letter, the law firm disclosed to the Trustee that "Mr. Shearin's capital account was $28,844," but was inaccessible under the law firm's partnership agreement, enclosed with the letter. The dearth of information prompted the Trustee to inquire further into the profit issue in a September 11, 1996 letter to the law firm. The Trustee specifically asked about any work Shearin had credited at the date of filing that would lead to a distribution of profits at a later date.

The law firm did not respond to the Trustee's September inquiries. The Trustee wrote again on October 31, 1996 requesting the law firm's response within 10 days. Due to late receipt, the law firm responded to the request on November 27, 1996 asserting that the information requested was confidential and refusing to provide further information. The law firm's fiscal year ended on November 30, 1996. In accordance with the practice of the law firm since 1991, it paid to Shearin year-end distributions, $62,494.00 in December 1996 and $17,976.58 in January 1997. Ann Shearin deposited these checks into the Shearins' joint bank account. Shearin's capital account remained in the law firm's possession.

The bankruptcy court's decision In re Shearin , A.P. No. 97-00038-8-JLR, slip op. at 9-10 (Bankr. E.D.N.C. Feb. 17, 1998), resolved the issues of whether the capital account and the portion of year-end profits attributable to pre-petition work constituted property of the estate under 11 U.S.C. § 541 and Virginia partnership law. We have today affirmed the district court's judgment affirming the bankruptcy court in that case. See Beaman v. Shearin, No. 98-2191. The bankruptcy court decided in the companion proceeding, Beaman v. Vandeventer, et al., A.P. No. 97-00039-8-JLR, slip op. at 10 (Bankr. E.D.N.C. Mar. 24, 1998), that the Trustee had the right to recover from the Vandeventer firm the value of the capital account and the pre-petition profits under 11 U.S.C. § 542(a). The district court affirmed that order.

We review this appeal from the district court's order de novo. See In re Wilson, 149 F.3d 249, 251 (4th Cir. 1998).

3

II.

This appeal requires us to construe 11 U.S.C. § 542 of the Bankruptcy Code, the turnover provision. Section 542(a) provides that one with possession or control of estate property "shall deliver to the trustee, and account for, such property or the value of such property . . . ." 11 U.S.C. § 542(a). Section 542(c) provides an exception to the turnover duty for parties who transfer property in good faith and with neither actual notice nor actual knowledge of the commencement of the bankruptcy case. See 11 U.S.C. § 542(c). The holder may also be excused from turnover duty if the property held is of inconsequential value to the estate. See 11 U.S.C. § 542(a). The firm argues that (1) neither the capital account nor the pre-petition profits distributed to Shearin post-petition are property of the estate; (2) the firm did not have possession, control, or custody of the profits at the time the adversary proceeding was brought; (3) the firm cannot turnover to the Trustee what it no longer has; and (4) at the time the firm paid the profits, it had a good faith dispute with the Trustee over the inclusion of profits and the capital account in the estate.

A.

We have today held in Shearin v. Beaman, No. 98-2191, that Shearin's capital account and the portion of year-end profits attributable to his pre-petition work constitute property of the estate.[3] We adhere to that holding here.

The law firm's second argument, that it had no possession of pre-petition year-end profits, applies exclusively to the turnover of those profits paid to Shearin.[4] The law firm paid Shearin his year-end prof-

_____

[3] Throughout this opinion, such profits are referred to as property of the estate. Those profits are part of the estate under 11 U.S.C. § 541(a)(1) and (6). They flow from Shearin's partnership interest and his right to profits therefrom. See Va. Code Ann. § 50-24 and § 50-26 (Michie 1950).

[4] The law firm's second contention does not apply to the capital account because the law firm has remained in possession of Shearin's capital account throughout the bankruptcy case and these adversary proceedings. The account was valued at $28,844.10 on the date of the male debtor's petition. We agree with the bankruptcy court's assessment that this asset offers "substantial value to the estate . . . ."

4

its in December 1996 and January 1997, whereas this adversary proceeding began in March 1997, and the case began July 12, 1996 upon the filing of the petition. The claim is that such profits were paid to Shearin in December, 1996 and January, 1997, prior to the commencement of the adversary proceeding. Section 542(a) provides a broader remedy than solely the turnover of property held at the time of an adversary proceeding, which could occur well after the filing of a bankruptcy petition. It provides that "an entity . . . in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 . . . shall deliver to the trustee, and account for, such property or the value of such property . . . ." 11 U.S.C. § 542(a) (emphasis added). We construe the language "during the case" to refer to the entire bankruptcy case, not just the adversary proceeding.5 Accord Boyer v. Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A. (In re USA Diversified Prods., Inc.), 100 F.3d 53, 55 (7th Cir. 1996) (applying section 542(a) to "[o]ne who during a bankruptcy proceeding is `in possession, custody, or control' of property" belonging to the debtor's estate); Redfield v. Peat, Marwick, Mitchell, & Co. (In re Robertson), 105 B.R. 440, 457 (Bankr. N.D. Ill. 1989) (stating that the statute "plainly applies to estate property that was possessed by anyone `during the case' whether or not they still have it"). The law firm in this case had possession and control over pre-petition profits generated in the current fiscal year before July 12, 1996, the date of the bankruptcy filing, 6 and retained control and possession of those profits until year-end distribution in December 1996 and January 1997. Accordingly, Shearin's year-end profits, pro-rated to July, 12, 1996, are subject to turnover, and the firm, having possessed7 such profits must "account for" that property "or the

_____

5 For the general distinction between a case and proceeding in bankruptcy see 3 Norton, Bankruptcy Law & Practice § § 138:2; -3 (2d ed. 1997).

6 Before trial in the companion proceeding, the parties stipulated that between December 1, 1995 and June 30, 1996, Shearin's receipts totaled $276,229.00, and that his year-end receipts totaled $322,443.00. The bankruptcy court concluded that 85.6% of the debtor's receipts and contribution to the year-end profits, were generated pre-petition.

7 We know that the law firm had control of these profits during the bankruptcy proceedings because it dispersed bi-monthly draws to the male debtor and adjusted his year-end distribution to reflect those advancements, pursuant to the partnership agreement.

5

value of said property." See In re USA Diversified Prods., Co., 100 F.3d at 55 (quoting section 542(a)).

The firm's third contention concerns its lack of possession and inability to turn over the profits already distributed which is answered by In re USA Diversified Prods., Co., with which we agree. The court in that case decided that section 542(a) "requires the delivery of the property or the value of the property" and that to read it otherwise would enable possessors of property of the estate to escape trustees' demands "simply by transferring the property to someone else." 100 F.3d at 56.

We also agree with the court's construction of § 542(c) in Diversified Products, that an overly literal construction of § 542(c) is not the correct construction of that provision. For example, merely "actual notice" or "actual knowledge of the commencement of the case" is not alone sufficient to impose liability upon a holder of the property of the bankrupt unless "the relevant knowledge or notice is knowledge or notice to a possessor of property that a bankruptcy proceeding had begun and that the property in the possessor's custody was property of a debtor in that bankruptcy proceeding." 100 F.3d at 57. In the case at hand, the letters passing between the Trustee and Vandeventer and the trial testimony and exhibits not only show that the firm knew that the bankruptcy case had begun, but also that the interest of Shearin in the pre-petition profits and in the capital account was claimed by the Trustee to be the property of Shearin in that bankruptcy.

The fact that the firm paid the pre-petition profits to Shearin prior to the filing of the adversary proceeding by the Trustee is also raised as a defense. The firm, as controlling authority, relies on our decision in Hager v. Gibson, 109 F.3d 201 (4th Cir. 1997), which the firm characterizes as holding that the property in question to be subject to the turnover statute, § 542(a), "must be in the present possession [of the law firm] when the adversary proceeding was brought." Br. p.32. Vandeventer's reliance on that part of our opinion, see Hager, 109 F.3d at 211, upon which the sought-for conclusion is based, relating to Hager's lack of possession at the time of the adversary proceeding, however, is entirely misplaced. In the Hager case, we held that, because Hager did not have possession of the money at any time, "Hager, therefore, has not possessed either the $40,000 or any pro-

6

ceeds from its use as a result of that transaction and may not, for that reason, be required to turn the sum over under § 542(a)." 109 F.3d at 210-11. The notation in the opinion of the bankruptcy court in this case, that Hager's receipt and disposal of the sum of $40,000 pre-petition made the case clearly outside of § 542(a)'s reach, was correct as far as its reference to time goes, but its statement that Hager had received the property pre-petition is simply an error.

In sum, Shearin's partnership interest was property of the debtor and became property of the estate on July 12, 1996. This interest entitled Shearin to the year-end profits flowing from his pre-petition work and to his capital account, which he had contributed pre-petition. See Shearin v. Beaman, No. 98-2191. The law firm knew enough to "place a reasonable person on notice, requiring the firm to conduct a reasonable inquiry to determine" the proper disposition of the profits and capital account. In re USA Diversified Prods., Inc., 100 F.3d at 57. The bankruptcy court's assessment of the law firm's duty to "consult with the [T]rustee or make sufficient inquiry into the relevant facts before distributing the profits" was correct.

Any argument of Vandeventer to the effect that the Trustee had elected a remedy by proceeding first against the Shearins is without merit. The Trustee may make only one collection, however. We note that the argument of Vandeventer is divided into eight separate parts, plus two sub-parts. We have tried to consider all of them. Any omission on our part to have mentioned every such assignment of error explicitly in our opinion is no indication it may have merit, for we have considered all of the points raised and are of opinion that none have merit.

The judgment of the district court is accordingly

AFFIRMED.

WILKINS, Circuit Judge, concurring in part and dissenting in part:

The majority affirms the order of the district court in its entirety. I agree that Shearin's capital account and the portion of the year-end profits attributable to his pre-petition work constitute property of the

7

estate. However, I believe the bankruptcy court erred in ordering the law firm to turn over the amount of the 1996 year-end profit disbursement because the firm had already relinquished possession of the disbursement by the time this adversary proceeding was commenced. I therefore respectfully dissent from the majority opinion to the extent that it holds otherwise.

Section 542(a) of Title 11 provides:

> Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C.A. § 542(a) (West 1993).

Citing Boyer v. Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A. (In re USA Diversified Prods., Inc.), 100 F.3d 53, 56 (7th Cir. 1996) [hereinafter Diversified], the majority concludes that § 542(a) does not require that the profits have been possessed by the law firm at the time the turnover petition was initiated in order for the statute to apply. See ante, at 6. Were we writing on a clean slate, I might be inclined to follow Diversified as well. However, we are not writing on a clean slate, as this court adopted a contrary interpretation of § 542(a) in Hager v. Gibson, 109 F.3d 201, 210-11 (4th Cir. 1997). See Smith v. Moore, 137 F.3d 808, 821 (4th Cir. 1998) ("It is well established that a decision of this Court is binding on other panels unless it is overruled by a subsequent en banc opinion of the Court or an intervening decision of the United States Supreme Court."); 3 William L. Norton, Jr., Norton Bankruptcy Law and Practice 2d § 52:4, at 6 n.12.5 (Supp. 2000) (noting conflict between Diversified and Hager).

In Hager, a bank made a $150,000 loan to a corporation, and the loan was personally guaranteed by the corporation's two fifty-percent stockholders, Hager and Roop. See Hager, 109 F.3d at 203. When the

8

loan balance stood at $129,764.04, Hager purchased the note from the bank, using a $40,000 check drawn on the corporate account and an $89,764.04 check drawn on his personal account. See id. When the corporation subsequently filed for bankruptcy, the Trustee brought an action seeking, inter alia, the $40,000. See id. at 204. The bankruptcy court granted summary judgment to the Trustee, and the district court affirmed. See id. at 206.

This court analyzed the issue of whether the Trustee could obtain the $40,000 under the turnover statute as follows:

> Hager contends that this section does not authorize recovery of the $40,000 applied in payment of the . . . note because he was not, when the adversary proceeding was brought, "an entity in possession, custody, or control during the case" of that property. We agree. Present possession, either actual or constructive, of the property or its identifiable proceeds, by the person from whom its turnover is sought, is required for recovery under this section. See Maggio v. Zeitz, 333 U.S. 56, 64, 68 S. Ct. 401, 405-06, 92 L. Ed. 476 (1948) (applying pre-code judicially developed turnover principles in so holding); In re Sun Spas by Schaeffer, Inc., 122 B.R. 452, 455 (Bankr. M.D. Fla. 1990); In re Gailey, Inc., 119 B.R. 504, 514 (Bankr. W.D. Pa. 1990). Here, the Trustee contends that Hager was in possession of proceeds of the $40,000 when the adversary proceeding was brought by virtue of his ownership of the . . . note partially purchased with that sum. But, as we have previously pointed out, that misstates the nature and effects of that transaction. Rightly analyzed, the $40,000 was applied to reduce[the corporation's] indebtedness on the note, thereby reducing the balance owing upon it, hence its value upon Hager's then purchasing it from [the bank] with his own check for the balance remaining. Hager therefore has not possessed either the $40,000 or any proceeds from its use as a result of that transaction and may not for that reason be required to turn the sum over under § 542(a).

Id. at 210-11 (emphasis added).

9

As the excerpt indicates, Hager's challenge was based entirely on the fact that he lacked possession of the $40,000 or its proceeds when the turnover proceeding was initiated, and our reversal of the district court was based solely on our application of the rule that possession of property or its proceeds at the time the adversary proceeding is initiated is required in order for the property to be subject to the turnover statute.*See id. at 210. Because the law firm here was not in possession of the disbursement or any proceeds thereof when the adversary proceeding was initiated, I would apply the rule announced in Hager and hold that the bankruptcy court erred in ordering the firm to turn over funds in the amount of the disbursement.

_____

*The majority opinion implies that the result in Hager was based on the fact that Hager never had possession of the $40,000 or its proceeds, not on the mere fact that he did not possess the money when the turnover proceeding was initiated. See ante, at 6. Although we mentioned in Hager that Hager actually never possessed the $40,000 or its proceeds, we noted that fact only in the context of explaining that Hager did not possess the $40,000 or its proceeds when the turnover proceeding was initiated. See Hager, 109 F.3d at 210-11.

10