**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: NORMAN W. SHEARIN, JR.;
ANN SHEARIN,*
<u>Debtors.</u>

STEPHEN L. BEAMAN, Trustee,

No. 98-2191

<u>Plaintiff-Appellee,</u>

v.

NORMAN W. SHEARIN, JR.; ANN
SHEARIN,
<u>Defendants-Appellants.</u>

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, District Judge.
(CA-98-381-BR-5, BK-96-3403-8-L, AP-97-38-8-L)

Argued: April 8, 1999

Decided: August 17, 2000

Before WIDENER and TRAXLER, Circuit Judges,
and BUTZNER, Senior Circuit Judge.

_____

Affirmed by published opinion. Judge Widener wrote the opinion, in
which Judge Traxler and Senior Judge Butzner concurred.

_____

*Mrs. Shearin's name appears in some of the papers as Anne.

**COUNSEL**

**ARGUED:** Richard Merryman Stearns, Kinston, North Carolina, for Appellants. Charlene Boykin King, BEAMAN & KING, P.A., Wilson, North Carolina, for Appellee. **ON BRIEF:** Norman W. Shearin, VANDEVENTER BLACK, L.L.P., Kitty Hawk, North Carolina, for Appellants. Stephen L. Beaman, BEAMAN & KING, P.A., Wilson, North Carolina, for Appellee.

_____

**OPINION**

WIDENER, Circuit Judge:

Defendants-debtors, Norman W. Shearin, Jr. and Ann S. Shearin, his wife, appeal the district court's judgment affirming the bankruptcy court's order in an adversary proceeding entitling Stephen L. Beaman, Trustee, to recover $52,133.64 from the defendants and, in addition, concluding that Shearin's capital account in the amount of $28,844.10 was property of the estate. The $52,133.64 represents the portion of Shearin's year-end distribution that he earned pre-petition at the law firm of Vandeventer, Black, Meredith, and Martin, L.L.P. in his capacity of equity partner. The capital account sum represents the stipulated amount Shearin had contributed to the law firm. We affirm the judgment of the district court.

I.

On July 12, 1996, Norman W. and Ann S. Shearin filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, and Stephen L. Beaman, the plaintiff in this action, was appointed as Trustee. Shearin was at that time, and continues to be, an attorney and equity partner at the law firm of Vandeventer, Black, Meredith, and Martin, L.L.P. (Vandeventer). The firm is a registered limited liability partnership with offices located in Norfolk, Virginia and Kitty Hawk, North Carolina. A partnership agreement that was executed on January 1, 1996 governs the law firm. In Schedule B attached to his petition for bankruptcy, Shearin listed his interest in the law firm partnership as an asset with a zero dollar current market value and did not claim an exemption for that asset.

2

The law firm continued to operate as a reconstituted partnership under the same partnership agreement and organizational scheme after Shearin's filing for bankruptcy. Similarly, Shearin continued as an equity partner of the law firm. The law firm did not wind up its affairs or conduct any settlement of accounts. Pursuant to the partnership agreement, for the purposes of receipts, the law firm's fiscal year runs from December 1 to November 30, at the conclusion of which, the Management Committee of the firm calculates the allocation of profits among the equity partners. First, any available distributive net profits are divided into two portions: objective and subjective. Then, each partner is given an objective and subjective valuation. The Management Committee evaluates each partner objectively using the percentage each partner's receipts contributed to total partnership receipts during the current and preceding two fiscal years. The subjective evaluation is based on a variety of factors ranging from client development to other beneficial contributions to the law firm. Each partner's given objective and subjective percentage is then applied to the respective objective and subjective portion of the law firm's distributable net profits.

The parties stipulated that between December 1, 1995 and June 30, 1996, prior to Shearin's petition, his receipts totaled $276,229.00, and his receipts for the entire 1995-96 fiscal year totaled $322,443.00. Based upon these amounts, the bankruptcy court determined that 85.6% of his receipts was attributable to pre-petition work. When Shearin filed his petition, the Management Committee had not yet ascertained the distributable net profits for the fiscal year. In December 1996, however, Shearin did receive as his share of the distributable net profits for the fiscal year from the law firm, one check for $62,494.00. He received another check in the amount of $17,976.58 in January 1997. The bankruptcy court found that Shearin only netted $76,042.75 of the total disbursements, which reflected the adjustments made by the law firm for the repayment of sums advanced to Shearin earlier in the fiscal year. No exception is taken to this figure. Of that sum of $76,042.75, the bankruptcy court, by prorating and attributing variously objective and subjective funds, arrived at the sum of $52,133.64, which was the share of profits of the law firm due to Shearin for his participation in the affairs of the law firm through July 12, 1996, the day of the filing of the petition. To the amount of

3

this sum there is also no exception taken on appeal. The exception taken is that none of said sum is subject to turnover to the Trustee.

The bankruptcy court also found that Shearin's capital account, with the stipulated value of $28,844.10 on the date of his petition, was property of the estate. According to the partnership agreement, when a non-equity partner is admitted as an equity partner, he is required to make a capital contribution equal to that of the existing partners with the same seniority. Shearin became an equity partner in 1991.

From the time of Shearin's petition to the entry of discharge in November 1996, the Trustee corresponded with the law firm, making inquiries into Shearin's interest in the law firm. The law firm responded by sending a copy of the partnership agreement to the Trustee and by requesting a confidentiality agreement with the Trustee. The law firm did not, however, segregate any of its records or earnings or make any change in the distributions to Shearin due to his bankruptcy petition.

The bankruptcy court determined that a substantial portion of the year-end profits distributed by the law firm in December 1996 were traceable to Shearin's pre-petition work, thereby becoming property of the estate under 11 U.S.C. § 541(a)(1) and (6). The bankruptcy court also concluded that the entire amount in his capital account, $28,844.10, was property of the estate and that the Trustee could seek its recovery by whatever means he deemed appropriate.

We review an appeal from a district court's order affirming an order of the bankruptcy court de novo. See In re Wilson, 149 F.3d 249, 251 (4th Cir. 1998). We stand in the shoes of the district court as we review the conclusions reached by the bankruptcy court. See In re Runski, 102 F.3d 744, 745 (4th Cir. 1996).

II.

The resolution of this case revolves around the nature of the bankrupt estate's interest in Shearin's law firm partnership interest. On July 12, 1996, Shearin's pre-petition partnership interest in the law firm became property of the estate under § 541(a) of the Bankruptcy

4

Code. 11 U.S.C. § 541(a)(1) and (6) (defining property of a bankrupt estate as "all legal or equitable interests of the debtor in property as of the commencement of the case"); see also In re Cordova, 73 F.3d 38, 42 (4th Cir. 1996) (stating that § 541(a)(1) is all-embracing). In considering the status of Shearin's partnership interest, and specifically his right to receive partnership profits and his capital account, both of which stemmed from his pre-petition past, we consider that courts look to state law when determining a debtor's interest in property. In re Hudgins, 153 B.R. 441, 443 (Bankr. E.D. Va. 1993). See Butner v. United States, 440 U.S. 48, 54 (1979). The timing of the petition is also relevant because § 541(a) of the Bankruptcy Code allows the debtor to accumulate new wealth and make a "fresh start" after the "commencement of the [bankruptcy] case." See In re Andrews, 80 F.3d 906, 910 (4th Cir. 1996).[1] Consequently, consideration of Virginia partnership law, (Virginia's Uniform Partnership Act), and the Bankruptcy Code requires that Shearin's property rights on the date of his petition define his interest in the partnership.[2] See Va. Code Ann. §§ 50-24, et seq. (Michie 1950). It is this "`complex and often tortuous interaction between the Bankruptcy Code, state partnership law, and a [ ] partnership agreement' that causes courts consternation." In re Grablowsky, 180 B.R. 134, 137 (Bankr. E.D. Va. 1995) (quoting In re Cutler, 165 B.R. 275, 276 (Bankr. D. Ariz. 1994)).

A.

Vandeventer's partnership agreement does not contain provisions addressing a partner's personal bankruptcy.[3] Virginia's version of the

_____

[1] 11 U.S.C. § 541(a)(6) further includes any "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except as are earnings from services performed by an individual debtor after the commencement of the case" as property of the estate. (emphasis added)
[2] This chapter of the Code of Virginia was repealed effective January 1, 2000, however, we believe that the new code sections do not apply to the facts before us. See Va. Code Ann. § 50-73.147 (Michie 1950). We apply the Uniform Partnership Act as adopted in the Code of Virginia, § 50-1 through § 50-43.12.
[3] The bankruptcy court noted that where the partnership agreement is silent, Virginia law applies to resolve unaddressed issues.

Uniform Partnership Act § 50-31 provides that the bankruptcy of any partner causes a dissolution of the partnership. See Va. Code Ann. § 50-31(5) (Michie 1950). On July 12, 1996, the filing date, two events occurred that were significant in this case. First, Shearin's pre-petition partnership interest became property of the estate, and second, the law firm dissolved. See In re Weiss, 111 F.3d 1159, 1167 (4th Cir. 1997) (holding that a partnership interest constitutes "property of the estate").

Although the partnership was in dissolution on the petition date on account of the filing of Shearin's petition, the law firm did not wind up its partnership affairs at that time or at any later date.[4] Instead, the law firm partners agreed to continue the business without liquidation of partnership affairs, thereby vesting title in the dissolved partnership's assets in the continued partnership, as authorized under Va. Code Ann. § 50-37.1.[5] The bankrupt estate succeeded to his pre-petition interest in the partnership.[6] It is not at once apparent why the

_____

[4] Va. Code Ann. § 50-29 defined dissolution as a change in the relation of the partners caused by any partner ceasing to be associated in the carrying on, as distinguished from the winding up of the business. We also distinguished dissolution from termination after winding up of partnerships in FDIC v. Hish, 76 F.3d 620, 623 (4th Cir. 1996).
[5] Shearin remained as a partner in the continued partnership, and the law firm did not engage in a settlement of his pre-petition accounts. If the law firm had settled the accounts between the partners, the Code provided that the following distribution would have occurred: payment to creditors other than partners; payment to partners other than for capital and profits; payment to partners in respect of capital; and payment to partners in respect of profits. Va. Code Ann. § 50-40(2) (Michie 1950).
[6] A Chapter 7 Trustee has the duty to "collect and reduce to money the property of the estate for which the Trustee serves," 11 U.S.C. § 704(1), and the Trustee may sell property of the estate out of the ordinary course of business in order to obtain the money. 11 U.S.C.§ 363(b)(1). Reducing a partnership interest to money either by selling the interest or by seeking a liquidation of all of the partnership assets to determine the amount attributable to the partnership interest is a problematic proposition due to the other partners' interests and the nature of the partners' rights in specific partnership property. See Va. Code Ann. § 50-25 (Michie 1950); see also In re Manning, 831 F.2d 205 (10th Cir. 1987); In re Cutler, 165 B.R. at 278-79.

6

Trustee could not have sold the partnership interest under 11 U.S.C. § 363(h), which gives a Trustee the power to sell estate property; however, the Trustee did not proceed in this manner. Furthermore, the law firm did not proceed to account for Shearin's partnership interest in any way either by settling his account or by winding up partnership affairs. Despite the law firm's inaction, Shearin's partnership interest became estate property, and the rights thereunder followed.

Shearin asserts that the Trustee could not at the time of the petition filing, and cannot at present, force the winding up of partnership affairs or the liquidation of the partnership assets. That question, however, is one we need not, and do not, decide, for the Trustee before us does not seek in this case authority for himself to force a winding up or a liquidation. The lack of such claim, however, does not give rise to any right of Shearin to keep pre-petition interests that stem from his partnership interest or his capital account.

We find the case of Amsinck v. Bean, 89 U.S. 395 (1874), persuasive, even if not controlling, and we follow that case. In Amsinck, in holding that the assignee (Trustee) of a bankrupt partner was not entitled to himself enforce the winding up of partnership affairs when that partner was bankrupt, the Court held that the other partner had to account to the Trustee of the bankrupt partner for the interest of the bankrupt in the partnership. It stated:

> Bankruptcy, it is said, when decreed by a competent tribunal, dissolves the copartnership, but the joint property remains in the hands of the solvent partner or partners, clothed with a trust to be applied by him or them to the discharge of the partnership obligations and to account to the bankrupt partner or his assignee for his share of the surplus. Ex parte Norcross, 5 L. R., 124; Harvey v. Crickett, 5 Maule & S., 339. (Emphasis added.)

395 U.S. at 403. While Amsinck was decided under the statutes in effect at that time, that very holding was applied by the Supreme Court of Washington, for example, as to the interest of a bankrupt partner in Stickney v. Kerry, 348 P.2d 655, 656 (Wash. 1960), in deciding how the interest of a bankrupt partner was treated. The holding of Amsinck and Stickney are consistent with the holding of In re

7

Cutler, 165 B.R. 265 (Bankr. D. Ariz. 1984), which treated the interest of the Trustee of a bankrupt partner as that of a creditor with a charging order.[7]

Shearin, as a Chapter 7 debtor, cannot retain the pre-petition interest and the profits stemming from it after it has become property of the estate. See 11 U.S.C. § 541(a)(6). The fact that the law firm chose to continue rather than to wind up and terminate does not shield Shearin from the reality that his pre-petition interest in the law firm, or the profits derived from that interest, became part of the bankrupt estate as of July 12, 1996. The law firm's practice of distributing profits at year-end does not take the partnership interest and its corresponding rights out of the estate.[8]

B.

The bankruptcy court also relied on the Bankruptcy Code's bright line distinction between the debtor's pre- and post-petition assets. Using the test first enumerated in Segal v. Rochelle, 382 U.S. 375, 380 (1966), and later reiterated in In re Ryerson, 739 F.2d 1423 (9th Cir. 1984), the bankruptcy court concluded that 85.6% of the year-end profits was directly traceable to the male debtor's pre-petition work and "sufficiently rooted in the pre-bankruptcy past." 739 F.2d 1423, 1426 (9th Cir. 1984) (holding that a portion of payment made upon termination of debtor's job was attributable to pre-petition work and within the bankruptcy estate). Similar to the court in Ryerson, we are concerned only with the distributed year-end profits to the extent the payments were related to pre-bankruptcy services, and we find that the amounts arrived at by the bankruptcy court were not arbitrary. 739

---

[7] The term charging order is defined in § 50-28 of the Code of Virginia as an order of a competent court to subject the interest of a debtor partner to the unsatisfied payment owed to a judgment creditor of that partner.
[8] Shearin argues that because the partnership agreement contains the provision, "Each partner shall receive such share of the partnership's net profits as shall, from time to time, be determined by the Management Committee" then the partner's interest in his share of the profits and surplus cannot exist until such determination is made. He asserts that the Management Committee's discretion make his right to share in profits a contingent or unvested right. We do not agree.

8

F.3d at 1425-26. In fact, the parties' stipulations as to Shearin's pre-petition generated receipts and the testimony of the law firm's committee member, support the bankruptcy court's determinations.

Courts in this and other jurisdictions have addressed the issue of whether post-petition payments are part of the estate in contexts other than post-petition distribution of partnership profits. See, e.g., In re Andrews, 80 F.3d 906 (4th Cir. 1996) (post-petition payment under pre-petition non competition agreement); In re Palmer, 57 B.R. 332 (Bankr. W.D. Va. 1986) (finding that because the debtor was required to perform certain post-petition services to receive payment, renewal commissions were not part of the estate). See also In re Wu, 173 B.R. 411 (B.A.P. 9th Cir. 1994) (finding that renewal commissions attributable to pre-petition services are part of the estate when paid post-petition). In Andrews, we recognized the pre-petition and post-petition distinction in our construction of § 541(a)(6). 80 F.3d 906, 910 (4th Cir. 1996). Although the facts in Andrews differ somewhat from those presented here, the construction of § 541(a)(6) instructs our decision today. Pre-petition assets or interests like Shearin's partnership interest are

> rooted in the debtor's pre-petition activities, including any proceeds that may flow from those [interests] in the future. Those [interests] belong to the estate and ultimately to the creditors. Post-petition assets are those that result from the debtor's post-petition activities and are his to keep free and clear of the bankruptcy proceeding.

80 F.3d at 910.

Regardless of Shearin's argument that the year-end distribution was contingent upon his remaining as a partner until the year-end distribution, we are of opinion that the bankruptcy court was correct in finding that "[Shearin] had a legally recognizable interest in profits of the law firm even though they were contingent and not subject to possession until some future time." The legally recognizable interest is the actual interest in the partnership, which is personal property of the debtor, and entitles him to share in the distribution of profits. That interest belonged to the estate and entitled the estate to become the recipient of these profits. In this case, the bankruptcy court appor-

9

tioned Shearin's profit distribution between pre-petition work and post-petition work. The partnership agreement does not provide that a partner must remain employed in order to receive his year-end distribution, but, even assuming that this requirement was in place, the bankruptcy court's reasoning followed the premise that even "[i]f some post-petition services are necessary, then courts must determine the extent to which the payments are attributable" to both the pre- and post-petition services. Wu, 173 B.R. at 414-15.

III.

The parties stipulated that the value of the capital account on the date of the petition was $28,844.10, all of which was contributed pre-petition and increased or decreased pre-petition. A"capital contribution by a partner is a debt of the partnership . . .." 59A Am. Jur. 2d § 979. Again, the partnership agreement is silent on the return of capital accounts in the event of bankruptcy, but does outline the procedure for voluntary withdrawal or retirement. Upon voluntary withdrawal or retirement, a partner is entitled to his capital account in an amount shown on the partnership books at the close of the preceding calendar year, payable over ten years. The Uniform Partnership Act also treats capital contributions of partners as a liability owed by the partnership to those partners in the event of dissolution, winding up, and settlement of accounts. See Va. Code Ann. § 50-40(2)(c). Shearin asserted at trial that because the partnership agreement only provided for repayment of capital accounts in the event of retirement or voluntary withdrawal, the partnership agreement did not authorize the repayment of capital contributions in any other event. Shearin did not have to engage in post-petition activities to trigger his right of repayment of his capital contributions because his partnership interest was vested and not contingent upon anything. See Va. Code Ann.§ 50-24, § 50-26 (Michie 1950) (the partnership interest is a property right of the partner and constitutes personal property). Even if repayment were conditioned on the firm's choice to settle its accounts,[9] the law firm's decision to continue does not entitle it to escape its obligations.[10]

_____

[9] A "[capital account] constitute[s] a fund . . . for a ratable division of what is left among the partners." 59A Am. Jur. 2d § 331.
[10] If the law firm's affairs had been wound up and the accounts settled, Shearin's creditors would have benefited from whatever money was distributed to the partners according to their share in the partnership after all of the firm's other liabilities had been paid.

10

To resolve the disposition of the capital contribution, the bankruptcy court applied the bright line distinction between pre- and post-petition assets, and concluded that the account had accrued as a result of the male debtor's pre-petition work, similar to the year-end profits. Because a partnership interest also includes the right to be repaid capital contributions that are contributed pre-petition, see 59A Am.Jur. 2d at § 476, the estate is entitled to Shearin's capital account. We conclude that the capital account is property of the estate under state partnership and federal bankruptcy law: specifically, Virginia's Uniform Partnership Act's § 50-40, referring to capital contributions of partners as partnership liabilities; the overarching premise in § 50-41 that the continued partnership retained the liabilities and creditors of the old partnership; and § 541(a)(6) of the Bankruptcy Code, which excludes from property of the estate sums which are a result of and attributable to services performed by the debtor subsequent to his bankruptcy filing, all support our conclusion.

IV.

We find that the bankruptcy court's decision to award to the estate both the portion of distributed profits attributable to pre-petition work and the capital account was as good an approximation as could be made as to what Shearin's interest would have been, had the firm settled its accounts as of the date of the petition. [11] Furthermore, the bankruptcy court's analysis of §§ 541(a)(1) and 541(a)(6) justifies this result. The bankruptcy court is a court of equity, and it exercised its powers to ensure that "substance will not give way to form, [and] that technical considerations will not prevent substantial justice from being done." Pepper v. Litton, 308 U.S. 295, 304-05 (1939). Not only do the bankruptcy court's equitable powers support this outcome, but the Uniform Partnership Act explains that "[i]n any case not provided for . . . the rules of law and equity . . . shall govern." Va. Code Ann. § 50-5 (Michie 1950). Were we to rule otherwise, "debtors would be able . . . to circumvent the bankruptcy laws through" the use of their partnership agreements and reconstituted partnerships. In re Andrews, 80 F.3d 906, 911 (4th Cir. 1996) (finding that debtors may be inclined to use other agreements to divert monies under the guise of post-petition entitlement).

_____

[11] No question is made in this case about other property of the law firm.

11

The judgment of the district court is accordingly

<u>AFFIRMED</u>.

12