**In re Gregory Leo EHMANN, Debtor.**

**Louis A. Movitz, Trustee, Plaintiff,**

**v.**

**Fiesta Investments, LLC, Defendant.**

**Bankruptcy No. 2–00–05708–RJH.**
**Adversary No. 04–00956.**

United States Bankruptcy Court,
D. Arizona.

Jan. 13, 2005.

John J. Hebert, Phoenix, AZ, for Debtor.

## OPINION DENYING DEFENDANT'S MOTION TO DISMISS COUNT I

RANDOLPH J. HAINES, Bankruptcy Judge.

The Court here concludes that because the operating agreement of a limited liability company imposes no obligations on its members, it is not an executory contract. Consequently when a member who is not the manager files a Chapter 7 case, his trustee acquires all of the member's rights and interests pursuant to Bankruptcy Code[1] §§ 541(a) and (c)(1), and the limitations of §§ 365(c) and (e) do not apply.

### Procedural Background

Plaintiff Louis A. Movitz ("Trustee") is the Chapter 7 Trustee for the estate of Debtor Gregory L. Ehmann ("Debtor"). The Trustee has sued Defendant Fiesta Investments, LLC ("Defendant" or "Fiesta"), an Arizona limited liability company of which the Debtor was a member when his bankruptcy case was filed. The Trustee's suit seeks a declaration that the Trustee has the status of a member in Fiesta, a determination that the assets of Fiesta are being wasted, misapplied or diverted for improper purposes, and an order for dissolution and liquidation of Fiesta or the appointment of a receiver for Fiesta.

---

1. Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

Fiesta has moved to dismiss the complaint. The Court understood Fiesta's motion as directed to Count II of the complaint to be based solely on an argument that the Court lacks subject matter jurisdiction, which this Court has already denied. The motion to dismiss Count I rests more on substantive law, arguing essentially that the Trustee has no rights with respect to Fiesta other than the right to receive a distribution that might have been made to the Debtor if and when Fiesta decides to make such a distribution. Such a motion to dismiss should be granted only if the Court concludes that the Trustee could prove no set of facts that would entitle him to any remedy other than simply waiting to see if Fiesta should ever decide to make a distribution.

## Background Facts

The Trustee's complaint identifies Fiesta as an Arizona limited liability company that was formed in approximately 1998 by the Debtor's parents, Anthony and Alice Ehmann. At the time it was formed, it had two assets, a 17% interest in City Leasing Co. Ltd. and 25% interest in Desert Farms LLC. Shortly after this bankruptcy case was filed, however, City Leasing was liquidated and as a result of that liquidation Fiesta received cash distributions in the amount of approximately $837,000 in the summer of 2000. Fiesta is still receiving regular quarterly distributions of cash from its other asset, Desert Farms.

The Trustee's complaint stems from the fact that although no formal distributions have been declared or paid to members, and certainly not to the Debtor, substantial amounts of cash have flowed out of Fiesta to or for the benefit of other members, including $374,500 in loans to members or to corporations owned or controlled by members, a $42,500 payment to one member, and $124,000 paid to another

member to redeem his interest. In response to the Trustee's demand for information and distributions, the managing member of Fiesta, the Debtor's father, responded that he had created "Fiesta a few years ago to remove assets from our estate for estate tax purposes, and to accumulate investments for the benefit of our children after our deaths .... [W]e see no reason to accede to the wishes of any member or assignee of any member which runs contrary to our original goals." Yet the outflow of over half a million dollars does not seem to be consistent with the original goal "to accumulate investments for the benefit of our children after our deaths."

## The Parties' Arguments

While the parties disagree on several relevant legal principles, a dispute that is absolutely central to the motion to dismiss is whether the Trustee's rights are governed by Bankruptcy Code § 541(c)(1) or by § 365(e)(2). In a very general sense, the latter provision, if applicable, permits the enforcement of state and contract law restrictions on the Trustee's rights and powers, whereas the former provision, if applicable, would render such restrictions and conditions unenforceable as against the Trustee. Because § 541 applies generally to all property and rights that the Trustee acquires, whereas § 365 applies more specifically to executory contract rights, the answer to this question hinges on whether the Trustee is asserting a property right or an executory contract right.

The Trustee's complaint does not expressly seek to exercise any rights under an executory contract, nor does it identify the Fiesta Operating Agreement as being an executory contract, but merely attaches it as an exhibit. Indeed, as Fiesta notes, the deadline for the Trustee to have assumed or rejected an executory contract

has long since passed.[2] In its motion to dismiss, Fiesta relies heavily on various provisions of the Fiesta Operating Agreement which provide that in the event a trustee acquires a member's interests, such action shall not dissolve the company or entitle "any such assignee to participate in the management of the business and affairs of the company or to exercise the right of a Member unless such assignee is admitted as a Member ...." Operating Agreement ¶ 7.2. "Such an assignee that has not become a Member is only entitled to receive to the extent assigned the share of distributions ... to which such Member would otherwise be entitled with respect to the assigned interest." *Id.* Fiesta further notes that such limitations on the rights of assignees of members' interests in LLCs are specifically authorized by state law, Arizona Revised Statutes ("A.R.S.") § 29–732(A). Fiesta also argues that the Trustee is akin to a judgment creditor, and that A.R.S. § 29–655(c) provides that a charging order is the exclusive remedy by which a judgment creditor of a member may satisfy a judgment out of the member's interest in an LLC. Nowhere in its motion to dismiss, however, does Fiesta argue that the Operating Agreement creates an executory contract between Members and the LLC, that § 365(e)(2) renders such provisions on which Fiesta relies enforceable against the Trustee, or that § 541(c)(1) is for some other reason inapplicable.

In response, the Trustee argues that he is not a mere assignee of the Debtor's membership interest, but rather acquired **all** of the Debtor's right, title and interest pursuant to § 541(a). He argues, further, that the Trustee took the Debtor's rights free of certain conditions and restrictions that would otherwise devalue the asset in the hands of any other assignee, pursuant to § 541(c)(1).

In reply, Fiesta relies on § 365(e) to maintain that the state and contract law restrictions are enforceable against the Trustee notwithstanding § 541(c)(1). Nowhere, however, does Fiesta ever establish, much less even attempt to demonstrate, that the Trustee's complaint seeks to enforce rights under an executory contract. To the contrary, Fiesta simply assumes or flatly asserts that the Trustee's rights hinge entirely on an executory contract: "In the case at bar, there is no dispute that if the Operating Agreement is considered as a partnership agreement it is an executory contract." Fiesta Reply at 6. And yet the very case that Fiesta cites after making that assertion itself concluded that a partnership relationship may include both an executory contract and a nonexecutory property interest in the profits and surplus. *Cutler v. Cutler (In re Cutler)*, 165 B.R. 275, 280 (Bankr.D.Ariz. 1994)(Case, B.J.).

If a partnership relation entails both executory contract rights and nonexecutory property rights, then it would seem to necessitate a threshold determination of which kind of rights are at issue for the particular kind of relief a Trustee seeks with respect to a partnership or LLC. Before reaching that issue, however, it may be fruitful first to examine whether the Fiesta Operating Agreement even includes any executory contract rights.

### Legal Analysis

 Although the Bankruptcy Code contains no definition of an executory contract, the Ninth Circuit has adopted the "Countryman Test": "[A] contract is exec-

---

**2.** The bankruptcy case was filed as a voluntary Chapter 7 on May 26, 2000. Bankruptcy Code § 365(d)(1) provides that in a Chapter 7 case, an executory contract is deemed rejected unless assumed or rejected by the Trustee within 60 days after the filing of the case.

utory if 'the obligations of both parties are so far unperformed that the failure of either party to complete performance would constitute a material breach and thus excuse the performance of the other.' "[3]

While Fiesta undoubtedly owes many obligations to its members pursuant to the Operating Agreement, for the contract to be executory there would also have to be some material obligation owing to the company by the member. Moreover, such member's obligation must be so material that if the member did not perform it, Fiesta would owe no further obligations to that member.

As noted above, in its briefing on the motion to dismiss Fiesta has not attempted to demonstrate that the Operating Agreement is in fact an executory contract, much less to demonstrate exactly what material obligation is owed to the company by its members. Moreover, the founding member's statement of the purposes for which the company was formed suggests that it is very likely there are no such obligations. The purpose was twofold: to remove assets from the parents' estates for estate tax purposes, and to accumulate investments for the benefit of their children after their deaths. One would certainly not expect the children-members to have any obligations with respect to satisfaction of that first goal, which was a unilateral act by the parents, and it is highly unlikely the children-members undertook any obligations with respect to the second goal, any more than would an ordinary prospective heir.

This suspicion is borne out by a close reading of the Operating Agreement itself. It imposes many obligations on the managers, but as noted above the manager is the Debtor's father, not the Debtor. Article V is entitled "Rights and Obligations of Members," but in fact it identifies only rights and no obligations. It (1) limits members' liability for company debts, (2) grants members the right to obtain a list of other members, grants members the right to approve by majority vote the sale, exchange or other disposition of all or substantially all of the company's assets, (4) grants the members rights to inspect and copy any documents, (5) grants members the same priority as to return of capital contributions or to profits and losses, and (6) grants the permissible transferee of a member's interests the right to require the company to adjust the basis of the company's property and the capital account of the affected member. In short, the Article of the Operating Agreement that is partially titled "Obligations of Members" reveals that members have no obligations to the company.

In the entire Agreement, the only provision where members, who are not managers, agree to do anything is Article 7.4, which provides in part that "Each member agrees not to voluntarily withdraw from the company as a member ...." It is now questionable in the Ninth Circuit whether such an agreement merely to refrain from acting is sufficient, standing alone, to create an executory contract.[4] But we need not go that far to resolve this issue, be-

3. *Unsecured Creditors' Comm. v. Southmark Corp. (In re Robert L. Helms Constr. and Dev. Co., Inc.),* 139 F.3d 702, 705 (9th Cir.1998), quoting *Griffel v. Murphy (In re Wegner),* 839 F.2d 533, 536 (9th Cir.1988), and citing Vern Countryman, *Executory Contracts in Bankruptcy: Part I,* 57 MINN. L.REV. 439, 460 (1973).

4. In the case where the Ninth Circuit first expressly adopted the Countryman test, it held that such an agreement to refrain from acting may be sufficient to make a contract executory: "Because of the exclusive nature of the license which Fenix received, Select–A–Seat was under a continuing obligation not to sell its software packages to other parties. Violation of this obligation would be a materi-

cause the sentence in which each member agrees not to voluntarily withdraw goes on to say: "[A]nd each Member further agrees that if he attempts to withdraw from the Company in violation of the provisions of this paragraph, he shall receive One Dollar ($1.00) in payment of his interest in the Company and the remaining portion of such Member's interest shall be retained by the Company as liquidated damages." This reveals that what at first may have appeared as a mandatory obligation is in fact merely an option, which gives each member the option of withdrawing if he is willing to accept $1.00 for his interest. But under *Helms*, such an unexercised option is not an executory contract.[5]

■ As demonstrated by the excellent analysis in *Smith*,[6] it is facile to assume that all partnership agreements are executory contracts. Closer analysis reveals that if there are no material obligations that must be performed by the members of a limited liability company or the limited partners in a limited partnership, then the contract is not executory and is not governed by Code § 365.[7] This case is therefore unlike others that have expressly found "an obligation to contribute capital" and other "continuing fiduciary obligations among the partners that make this [Partnership] Agreement an executory contract."[8]

In the absence of any obligation on the part of the member, it is difficult to see

---

al breach of the licensing agreement." *Fenix Cattle Co. v. Silver (In re Select–A–Seat Corp.)*, 625 F.2d 290, 292 (9th Cir.1980)(decided under the prior Bankruptcy Act). That decision was legislatively repealed in 1984 by the adoption of § 365(n). More recently, the *en banc* decision in *Helms*, *supra* note 3, reformulated the test in a way that focuses only on affirmative performance: "The question thus becomes: At the time of filing, does each party have something it must do to avoid materially breaching the contract?" 139 F.3d at 706. And the Andrews/Westbrook analysis, as thoroughly explained in *In re Bergt*, 241 B.R. 17, 21–36 (Bankr.D.Alaska 1999), demonstrates that it makes no sense to determine the "executoriness" of a contract if its assumption would impose no administrative liability on the estate, because the avoidance of such administrative liability when it exceeds the contractual benefits is the sole reason for executory contract law.

**5.** *Helms*, *supra* note 3, at 705.

**6.** *Samson v. Prokopf (In re Smith)*, 185 B.R. 285, 292–93 (Bankr.S.D.Ill.1995) (a majority of courts that have found limited partnership agreements to be executory contracts "have either accepted the executory contract characterization summarily or have dealt with limited partnership agreements under which the limited partner has continuing financial obligations to the partnership.").

**7.** *See, e.g., In re Garrison–Ashburn, L.C.*, 253 B.R. 700, 708–09 (Bankr.E.D.Va.2000)(there is no executory contract and § 365 does not apply to an operating agreement that imposes no duties or responsibilities on its members, but merely provides for the structure of the management of the entity); *Smith*, *supra* note 6, at 291–95 (limited partnership agreement was not executory as to a limited partner/debtor who had no material obligations to perform; the Chapter 7 trustee steps into the shoes of the debtor and may exercise debtor's right to dissolve the partnership).

**8.** *Calvin v. Siegal (In re Siegal)*, 190 B.R. 639, 643 (Bankr.D.Ariz.1996)(Case, J.), citing *In re Sunset Developers*, 69 B.R. 710, 712 (Bankr.D.Idaho 1987). *See also Summit Invest. and Dev. Corp. v. Leroux*, 69 F.3d 608 (1st Cir.1995)(§ 365 applies to general partner debtors who have duties and obligations to limited partnership); *Broyhill v. DeLuca (In re DeLuca)*, 194 B.R. 65 (Bankr.E.D.Va. 1996)(§ 365 applies to debtors who were managers of limited liability company with ongoing duties and responsibilities; because debtors' personal identity and participation were material to the development project, the § 365(e)(2) exception to assumption applies); *In re Daugherty Constr., Inc.*, 188 B.R. 607, 612 (Bankr.D.Neb.1995)(operating agreements are executory contracts because there are material unperformed and continuing obligations among the members, including par-

where an executory contract lies. This is consistent with the whole purpose of Fiesta. It was created simply as a way to reduce the estate tax liabilities that might otherwise have been incurred upon the death of the parents and the distribution of their estate to their heirs. Indeed, as *King Lear* suggests, the irrevocable transfer of the parents' assets to Fiesta and the irrevocable gift of membership interests in Fiesta to their children probably creates even less obligations on the children than the ordinary filial obligations morally felt by most expectant heirs.

Moreover, not only do there not appear to be *any* obligations imposed upon members by the Fiesta Operating Agreement, but there are certainly none with respect to either receipt of a distribution or proper management of the company by its managers. Members do not have to do anything to be entitled to proper management of the company by the managers. The Trustee's complaint does not involve the Debtor's lone arguable obligation not to voluntarily withdraw.

Because there are no obligations imposed on members that bear on the rights the Trustee seeks to assert here, the Trustee's rights are not controlled by the law of executory contracts and Bankruptcy Code § 365. Consequently the Trustee's rights are controlled by the more general provision governing property of the estate, which is Bankruptcy Code § 541.

■ Code § 541(c)(1) expressly provides that an interest of the debtor becomes property of the estate notwithstanding any agreement or applicable law that would otherwise restrict or condition transfer of such interest by the debtor. All of the limitations in the Operating Agreement, and all of the provisions of Arizona law on which Fiesta relies, constitute conditions and restrictions upon the member's transfer of his interest. Code § 541(c)(1) renders those restrictions inapplicable. This necessarily implies the Trustee has all of the rights and powers with respect to Fiesta that the Debtor held as of the commencement of the case.

■ It therefore appears that the Trustee may be able to prove a set of facts that would entitle the Trustee to some remedy. The appropriate remedy might include a declaration of the Trustee's rights, redemption of the Debtor's interest,[9] appointment of a receiver to operate the partnership in accordance with its purposes and the members' rights,[10] or dissolution, wind up and liquidation. Conse-

---

ticipation in management and contributions of capital).

9. As noted above, Fiesta has already redeemed one member's interest for $124,000. That suggests that it has the power to do so, that redemption of a member's interest is not contrary to Fiesta's interests or purposes, and that $124,000 might be an appropriate value for the Debtor's interest. Because the schedules filed in this case reflect priority and unsecured debts of less than $70,000, such a remedy might entirely satisfy the Trustee while simultaneously avoiding any disruption of the partnership or any conflict with the purposes for which it was created.

10. Although § 105(b) provides that "a court may not appoint a receiver in a case under this title," the precise language of that provision and case law make clear that it applies only to the administrative bankruptcy "case," not to an adversary proceeding. A "case" is what is commenced by the filing of a petition, *e.g.*, § 301, whereas a "proceeding" is commenced by a summons and complaint, Bankruptcy Rules 7001 & 7004. The provision was added simply because the Code "has ample provision for the appointment of a trustee when needed." S.Rep. No. 989, 95th Cong.2d Sess. 29 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5815. Consequently § 105(b) "does not prohibit the appointment of a receiver in a related adversary proceeding if otherwise authorized and appropriate." 2 LAWRENCE P. KING, COLLIER ON BANKRUPTCY ¶ 105.06, at 105–84.7 (15th

quently Fiesta's motion to dismiss must be denied.

Ed.2004). *Accord, Craig v. McCarty Ranch Trust (In re Cassidy Land and Cattle Co.),* 836 F.2d 1130, 1133 (8th Cir.1988); *In re Memorial Estates, Inc.,* 797 F.2d 516, 520 (7th Cir. 1986)("The power cut off by section 105(b) of the Bankruptcy Code is the power to appoint a receiver for the bankrupt estate, that is, a receiver in lieu of a trustee.").