334 B.R. 437 (2005)
In re Gregory Leo EHMANN, Debtor.
Louis A. Movitz, Trustee, Plaintiff,
v.
Fiesta Investments, LLC, Defendant.
Bankruptcy No. 2-00-05708-RJH. Adversary No. 04-00956.
United States Bankruptcy Court, D. Arizona.
December 7, 2005.
*438 Mark W. Roth, Hebert Schenk P.C., Phoenix, AZ, for Fiesta.
Terry A. Dake, Phoenix, AZ, for Trustee.
OPINION GRANTING TRUSTEE'S MOTION FOR SUMMARY JUDGMENT, ORDERING APPOINTMENT OF A RECEIVER, AND SETTING HEARING THEREON.
RUDOLPH J. HAINES, Bankruptcy Judge.
The Court here concludes that numerous violations of the operating agreement of an Arizona limited liability company entitle a trustee of a debtor/member to its judicial enforcement pursuant to A.R.S. § 29-682(c). When a member-manager of an Arizona limited liability company operates the LLC for the private benefit of himself and certain "insider" members, and to the exclusion of the trustee in bankruptcy who has the rights of a member, it is appropriate for a bankruptcy court to appoint a receiver to operate the partnership in accordance with its stated purposes and operating agreement.
Procedural Background
Plaintiff Louis A. Movitz ("Trustee") is the Chapter 7 Trustee for the estate of Debtor Gregory L. Ehmann ("Debtor"). Prior to filing his bankruptcy case, Debtor was a member of Fiesta Investments, LLC ("Fiesta"), an Arizona limited liability company. The Trustee has sued Fiesta seeking a declaration that the Trustee has the status of a member in Fiesta, the determination that the assets of Fiesta are, among other things, being misapplied,, and that Fiesta be dissolved and liquidated or that a receiver be appointed for Fiesta.
The Trustee has moved for partial summary judgment arguing that Fiesta is not being operated in accordance with its operating agreement but is being run for the private benefit of its member-manager and his children and to the exclusion of the rights of the bankruptcy estate. The Trustee asks that this Court grant his motion and appoint a receiver for the purpose of operating and/or liquidating and distributing the assets of Fiesta.
Facts
The underlying facts of this case are undisputed. Fiesta is an Arizona limited liability company that was formed in 1998 by Anthony and Alice Ehmann, the Debtor's parents. Anthony Ehmann purportedly established Fiesta to remove assets from the Ehmann estate for tax purposes and to accumulate investments for the benefit of the Ehmann children. At the time of its formation, Fiesta had two assets: a 25% interest in Desert Farms, LLC and a 17% interest in City Leasing Co., Ltd. Fiesta now receives distributions only from Desert Farms as City Leasing was liquidated shortly after the Debtor filed his *439 bankruptcy case. After the liquidation, approximately $ 837,000 was distributed to Fiesta.
While no formal distributions have ever been paid to the members of Fiesta, substantial amounts of money have flowed from Fiesta. Loans to members, loans to non-members, loans to member-owned corporations, and member redemptions have caused the outflow of approximately $541,000 of Fiesta money. While these loans have all been repaid with interest, the issue is whether the making of the loans have all been repaid with interest, the issue is whether the making of the loans and other "insider" transactions are contrary to the Operating Agreement and entitle the Trustee to some remedy.
Although the facts of Fiesta's insider transactions are not disputed, Fiesta argues that the manager's actions were taken in accord with its Operating Agreement and did not harm Fiesta nor diminish the Trustee's interest. The facts show that Anthony Ehmann has operated Fiesta in a manner that benefits only certain favored members and to the systematic exclusion of the bankruptcy estate. For example, approximately $417,000.00 was loaned to "insider" members, nonmembers and the managers of Fiesta between August 2002 and September 2003. During that period of time, Anthony Ehmann, then a non-member,[1] loaned himself $192,500.00 in violation of Article 4.11 of the Operating Agreement.[2] Fiesta also violated Article 4.11 of the Operating Agreement when Calypso Homes, a member-owned company, and Rose Ehmann, a member, both received loans exceeding more than seventy percent (70%) of the fair market value of their respective interests in the Company.[3] Loans to nonmembers and loans to members totaling more than 70% of their membership interests are in direct violation of Fiesta's Operating Agreement. All of these transactions occurred after the Trustee was appointed in this case upon its filing in May, 2000 and thereby succeeded to the Debtor's interest in Fiesta.
Legal Analysis
In its previous opinion,[4] this Court has already rejected Fiesta's contention that the Trustee only has "such rights that an assignee has to receive information under the Operating Agreement or applicable state law," and thus was only *440 entitled to receive an "assignee's share of distributions and allocations of profits and losses." The Court there held that because Fiesta's Operating Agreement imposes no affirmative obligations on the members, it does not constitute an executory contract in a (non-manager) member's bankruptcy case. Consequently the limitations of Code[5] §§ 365(c) and (e) do not apply. The Trustee's rights under the Operating Agreement are instead governed by Code § 541(e)(1), which explicitly provides that an interest of the debtor becomes property of the estate notwithstanding any agreement or law that would restrict or condition the transfer of the debtor's interest. The limitations that state LLC law and Fiesta's Operating Agreement impose on assignees are conditions and restrictions upon the transfer of a member's interest that are invalidated by Code § 541(e)(1).
In re-arguing this issue, Fiesta relies principally on Garrison-Ashburn,[6] a some-what similar case involving a limited liability company. The court there held that by filing a chapter 11 case and becoming a debtor in possession, a member of an LLC lost the ability to object to the non-debtor/manager's decision to sell the LLC's real property. The court so held because under Virginia law, a member of a limited liability company is disassociated upon the occurrence of filing a petition in bankruptcy, and that the effect of a member being disassociated is to "divest the member of all rights as a member to participate in the management or operation of the company."[7] The only rights that remained after disassociation were the disassociated member's economic rights as defined in Va. Code. Ann. § 13.1-1002.[8] According to the Garrison-Ashburn court, the result did not offend the Congressional intent behind § 541(c) as the economic interest would remain in the bankruptcy estate and would be available for the benefit of creditors.[9]
This Court disagrees. The effect of Code § 541(c) is not limited to "economic" interests, a distinction that does not there appear. Rather, its effect is to preserve, for the benefit of debtor's creditors, all of the debtor's interests in property whether deemed economic or not, and to eliminate any contractual or statutory limitations that might otherwise apply on account of their transfer to a trustee in bankruptcy. An interest in an Arizona limited liability company is personal property,[10] and such interest, notwithstanding limitations in the company's operating agreement, becomes property of the estate upon the filing of a petition in bankruptcy.[11]
The Garrison-Ashburn opinion correctly noted that § 541 "clearly encompasses all of [the partner's] interest in [the company], whatever that interest may be whether economic or non-economic,"[12] Further, "Section 541(c) makes plain that no restriction on the transfer of any interest of a debtor . . . prevents an interest from becoming property of the estate. [The partner's] interest in [the company], both his membership interest and his non-economic *441 economic rights and privileges as a member, became property of the bankruptcy estate. All the rights and privileges [he] had immediately prior to filing became property of his bankruptcy estate."[13] And yet those conclusions simply seem to have been ignored when the court then concluded that "Unless otherwise provided in the Bankruptcy Code, the rights and benefits [that became property of the estate] were burdened with all of the duties and obligations that came with them. Consequently, unless precluded by § 365(c) or (e), his bankruptcy estate has only the rights of an assignee under"[14] Virginia limited liability company law, which precludes an assignee from participating in management.[15] Section 541 (c) does Provide otherwise.
Having determined that the Trustee is not limited to the rights of an assignee of a member of Fiesta, the Court must now consider what judicial enforcement of the Operating Agreement is appropriate. The Trustee seeks judicial dissolution or appointment of a receiver. Two provisions of Arizona's limited liability company law might authorize such remedies. A.R.S. § 20-682 provides that "A court may enforce an operating agreement by injunction or by any other relief that the court in its discretion determines to be fair and appropriate in the circumstances." A.R.S. § 29-785(A) provides in pertinent part:
On application by or for a member, the superior court in the county in which the registered office of the limited liability company is located may decree dissolution of the limited liability company on judicial determination of any of the following:
1. It is not reasonably practicably to carry on the limited liability company business in conformity with an operating agreement.
. . . .
3. Unless otherwise provided in an operating agreement, the member or managers of the limited liability company have acted or are acting in a manner that is illegal or fraudulent with respect to the business of the limited liability company.
4. Unless otherwise provided in an operating agreement, substantial assets of the limited liability company are being wasted, misapplied or diverted for purposes not related to the business of the limited liability company.
Of these provisions, the one most directly applicable might be A.R.S § 29-785(A)(4), because substantial assets of the LLC have been misapplied and diverted to purpose not related to the LLC's business. But this remedy appears not to be available here because it is preface by "Unless otherwise provided in an operating agreement," and the Fiesta Operating Agreement expressly waives the members' rights to seek judicial dissolution under A.R.S § 29-785.[16]
By contrast, the statute effectively provides that an operating agreement may not waive a member's right to obtain judicial *442 dissolution under A.R.S § 29-785(A)(1) when "It is not reasonably practicable to carry on the limited liability company business in conformity with an operating agreement." That remedy might be available to the Trustee on these facts. However, the Trustee's motions for summary judgment and supporting affidavits do not really establish that Fiesta cannot be operated in accordance with its operating agreement, but only that it has not been so operated. Consequently this is not a remedy that the Court can grant on this motion for summary judgment.
The Court is therefore limited to enforcement pursuant A.R.S. § 29-682(c). That statute suggests that the ordinary remedy should be an injunction. In some circumstances it might be sufficient for a court simply to enjoin insider transactions that are contrary to the operating agreement.
In this case, however, Anthony Ehmann and Fiesta have engaged in such transactions after the Trustee was appointed and succeeded to the Debtor's interest, and after the Trustee put them on notice of his intent to enforce the Trustee's rights under the operating agreement. The Trustee's requests and demands were not simply ignored, they were defied.
The conduct of Fiesta and its manager since the Trustee's appointment demonstrates and unequivocal intent to operate Fiesta as if it were a revocable living spendthrift trust. Their reargument of the limitations imposed by the law of executory contracts, notwithstanding this Court's previous ruling that the operating agreement is governed solely by § 541, demonstrates an unequivocal determination to utilize executory contract law to shield assets from the member's creditors. Neither intent is sanctioned by either bankruptcy law or Arizona's law of LLCs.[17] Utilizing a legitimate business structure for the sole purpose of shielding assets from creditors borers on a fraud on creditors, especially when the Legislature has provided another mechanism[18] for accomplishing those same purposes that would put creditors on notice that they cannot rely on the value of the debtor's asset. The Court therefore concludes *443 that an injunction remedy would be no more effective than have been the statutory commands and obligations of Code §§ 352, 541 and 542.
The only potentially effective remedy therefore appears to be that of appointing a receiver to operate (or dissolve and liquidate) the LLC in accordance with its business purposes, its operating agreement and state law. Of course if the receiver determines that it is not reasonably practicable to carry on the limited liability company business in conformity with its operating agreement, then the receiver may be entitled to seek judicial dissolution pursuant to A.R.S. § 29-785(A)(1).
Conclusion
In its opinion regarding Fiesta's motion to dismiss, this Court noted that "the Trustee may be able to prove a set of facts that would entitle to trustee to some remedy."[19] Under the facts and circumstances presented, the most appropriate remedy is the appointment of a receiver to operate the partnership in accordance with its stated goals and the mandates of its operating agreement. Accordingly, the Trustee's motion for partial summary judgment is granted, and it is ordered that a receiver shall be appointed.
It is further ordered setting an evidentiary hearing on the selection of an appropriate receiver for January 9,2006, at 1:30 p.m., allowing one hour. Any party in interest may (and the Trustee shall) file by December 28,2005, a recommendation for the appointment of a particular person as receiver, accompanied by a resume summarizing that person's qualifications to act as receiver for an entity such as Fiesta. Any response to such a recommendation shall be filed by January 4, 2006. If an opposition to a recommendation is filed, the nominee shall appear and be examined at the hearing on January 9, 2006.
It is further ordered denying as moot and vacating the hearing set for December 8,2005, on Fiesta's motion to strike the Trustee's supplemental statement of facts in support of his motion for summary judgment.
NOTES
[1] Although he was its manager since the creation of Fiesta, Anthony Ehmann apparently did not become a member until he purchased the membership interest of Jerome Ehmann in October of 2003. Defendant's Exhibit X (assignment evidencing Jerome Ehmann's intent to transfer his membership interest in Fiesta to Anthony and Alice Ehmann on October 24, 2003, the date when Anthony and Alice Ehmann became members of Fiesta). The Trustee alleges this purchase was made just prior to the filing of bankruptcy by Jerome Ehmann and intended to keep Jerome Ehmann's interest out of his Colorado bankruptcy estate.
[2] Trustee's Exhibit Z. Fiesta Operating Agreement Article 4.11 ("The managers . . . may loan Company funds to any of the Members . . .") (emphasis added). While Fiesta argues that a limited liability company may loan money to the members as well as to the managers, A.R.S. § 29-610(a)(4). Fiesta's Operating Agreement explicitly states that only "Members . . . [and] Members who are Managers" may be eligible to receive loans from the Company.
[3] See Id.; see also Trustee's Reply In Support of Motion For Partial Summary Judgment at 6. It is highly unlikely that the fair market value of Rose Knapp's interest in Fiesta was $147,857.14, the value of her interest requisite to accommodate a loan in the amount of $100,000.00 and stay below the 70% limit imposed by Article 4.11, considering that a 16,6667% interest in approximately $750,000, the amount attributable to Fiesta members' capital accounts at the end of tax year 2003, is roughly $125,000.
[4] Movitz v. Fiesta Invs., LLC (In re Ehmann), 319 B.R. 200, 206 (Bankr.D.Ariz.2005).
[5] All references to the "Code" are to 11 U.S.C. §§ 101 et seq.
[6] In re Garrison-Ashburn, L.C., 253 B.R. 700 (Bankr.E.D.Va.2000).
[7] Id. at 704.
[8] Id.
[9] Id. at 709.
[10] A.R.S. § 29-732(A).
[11] Code § 541(a)(1) (The Commencement of a case creates an estate comprised of "all legal or equitable interests of the debtor in property. . . . ").
[12] In re Garrison-Ashburn, 253 B.R. at 708 (emphasis added).
[13] Id.
[14] Id.
[15] Id. at 706. Notwithstanding this Court's conclusion that § 541 (c) overrides state law and contractual limitations on the rights of an assignee, the Court need not here determine whether the Trustee could exercise the Debtor's vote in the LLC or otherwise participate in its management. The Court need only determine whether the Trustee can enforce a member's right to have the LLC operated in accordance with its operating agreement.
[16] Trustee's Exhibit Z, First Amendment To Operating Agreement Of Fiesta Investments, Article 7.3.
[17] As the Court's prior opinion in this case has already suggested, 319 B.R. at 204-05, estate planners' reliance on § 365(c) to prevent creditor access to assets is probably misplace, at least where an operating agreement imposes no affirmative obligations on the members. In this arcane and overly technical area of law, it is worthwhile to remember the fundamental reason why special treatment is accorded executory contracts as compared with other assets and liabilities of an estate  to permit trustees to realize on contracts that have a net asset value to the estate, while also permitting them to avoid the administrative liability that would accompany contract that lack such a net value. See In re Bergt, 241 B.R. 17, 21-22 (Bankr.D.Alaska 1999) (summarizing the law review analyses of Michael T. Andrew and Jay Lawrence Westbrook). Under Fiesta's operating agreement, as might be the case with most family limited partnerships, there is no possible administrative liability that would accrue to the estate for it to obtain the asset value of the membership interest. That is the underlying reason why Countryman's unperformed-material-mutual-obligation test excludes such a contract from treatment as an executory contract. Perhaps such a focus on the risk of administrative liability to the estate would be a useful framework for analysis when courts are faced with arguments that essentially negative covenants are sufficient to make a contract executory. Cf. Lubrizol Ent., Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.), 756 F.2d 1043, 1045 (4th Cir. 1985) ("The unperformed, continuing core obligations of notice and forbearance in licensing made the contract executory as to [the debtor].") and Fenix Cattle Co. v. Silver (In re Select-A-Seat Corp.). 625 F.2d 290 (9th Cir. 1980), repealed by Code § 365(n).
[18] A.R.S. §§ 14-7701 to 7710 (codifying the law of spendthrift trusts).
[19] Movitz, 319 B.R. at 206.