**In the Matter of H & W FOOD MART, LLC, Debtor.**

**No. 11–11525–WHD.**

United States Bankruptcy Court, N.D. Georgia, Newnan Division.

Aug. 22, 2011.

---

mediator's statement. That motion addressed the applicability of equitable tolling.

Edward F. Danowitz, Jr., Danowitz & Associates, P.C., Atlanta, GA, for Debtor.

## ORDER

W. HOMER DRAKE, Bankruptcy Judge.

Before the Court is a Motion to Dismiss Case for Cause, or, in the Alternative, for the Appointment of a Chapter 11 Trustee, filed by the United States Trustee (hereinafter the "Movant") in the above-styled bankruptcy proceeding. While H & W Foodmart, LLC (hereinafter the "Debtor") opposes the Motion, the Debtor's secured creditor, CharterBank, supports the request for dismissal. In the event the

Court determines that dismissal of the case is not appropriate, CharterBank seeks conversion of the case to Chapter 7. This matter constitutes a core proceeding, over which this Court has subject matter jurisdiction. *See* 28 U.S.C. § 157(b)(2)(A); § 1334.

### FINDINGS OF FACT

The Debtor is a Georgia limited liability company that operates a convenience store and gas station. The Debtor was formed on or about May 20, 2003. On May 2, 2011, the Debtor purportedly filed a voluntary petition under Chapter 11 of the Bankruptcy Code. The petition is signed by Jeffrey P. Hunt in his capacity as "President" of the Debtor. Filed with the petition was a document titled "Unanimous Consent of the Members of H & W Food Mart, LLC Authorizing the Filing of a Voluntary Bankruptcy Petition." This document states that all of the Debtor's members met on April 4, 2011 at a specially called meeting and approved the filing of the Debtor's petition. The authorization empowers the Debtor's "manager," Hunt, to prepare and sign the petition, including the necessary disclosures, and is signed by Hunt and Dewey Craig Welch. The document lists both Hunt and Welch as the holders of 50% of the membership units of the Debtor. Hunt's testimony given at the hearing on this matter confirms that Welch and Hunt met in the Debtor's attorney's office for the purpose of authorizing the filing of the Debtor's bankruptcy petition. It is also clear from Hunt's testimony that he and Welch operated under the assumption that Hunt never ceased being a member of the Debtor and that Hunt voted to authorize the filing.

On July 28, 2009, Hunt filed a voluntary petition under Chapter 7 of the Bankruptcy Code. Griffin Howell, III (hereinafter "Howell") was appointed as the trustee of Hunt's Chapter 7 bankruptcy estate. Hunt received a Chapter 7 discharge on February 26, 2010, but his bankruptcy case has remained open while Howell investigates the possibility of assets and continues to administer the estate. Aware of Hunt's ownership interest in the Debtor, Howell believed it could possibly be liquidated for the benefit of Hunt's creditors. The Debtor, as debtor-in-possession in a prior Chapter 11 case before this Court, had previously attempted to negotiate a restructuring with CharterBank's predecessor, McIntosh Commercial Bank. As part of that proposed deal, Howell was to receive funds as a result of the Hunt estate's ownership interest in the Debtor. After the deal was ultimately rejected by CharterBank, the Debtor's prior Chapter 11 case was dismissed.

The United States Trustee and CharterBank urge the Court to dismiss this case because Hunt lacked authority to sign the petition, and that Hunt and Welch lacked the authority to authorize the signing of the petition without Howell's consent. The United States Trustee and CharterBank reason that Hunt's ownership interest in the Debtor passed to Hunt's individual bankruptcy estate when Hunt filed his own Chapter 7 case, and Howell has never abandoned that interest. The Debtor opposes dismissal on that basis and asserts that, while Hunt's bankruptcy estate acquired the right to receive distributions from the Debtor, the bankruptcy estate did not receive the right to vote or otherwise participate in the management of the Debtor.

### CONCLUSIONS OF LAW

 "[I]t is generally accepted that a bankruptcy case filed on behalf of an entity by one without authority under state law to so act for that entity is improper and must be dismissed."[1] *In re A–Z Elec-*

---

1. An exception may exist to the requirement of dismissal when the party seeking dismissal has acted to "ratify" the filing. However,

*tronics, LLC,* 350 B.R. 886, 891 (Bankr.D.Idaho 2006); *see also In re Com-Scape Telecommunications, Inc.,* 423 B.R. 816, 830 (Bankr.S.D.Ohio 2010) ("Whenever a court 'finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, it has no alternative but to dismiss the petition.' "); *In re Sterling Mining Co.,* 2009 WL 2475302 (Bankr.D.Idaho 2009) (finding that, under *Price v. Gurney,* 324 U.S. 100, 65 S.Ct. 513, 89 L.Ed. 776 (1945), a federal court cannot "entertain a voluntary petition for bankruptcy filed on behalf of a corporation by one then without authority under state corporate law to file for the corporation and 'institute the proceedings.' "). The moving party must "demonstrate by a preponderance of the evidence" that the filing of the case was not authorized. *Com-Scape,* 423 B.R. at 830.

 The question of whether the filing of the bankruptcy petition was authorized depends upon the applicable state law and the facts of the case. *See A–Z Electronics,* 350 B.R. at 889 ("State law, not bankruptcy law, is used to determine whether the party signing the entity petition had the authority to do so."). The Debtor is a Georgia limited liability company. *See* Debtor's Operating Agreement (hereinafter the "Agreement"), ¶ 2.04. Georgia law provides "[i]f the articles of organization or a written operating agreement vests management of the limited liability company in one or more managers, then such persons shall have such right and authority to manage the business and affairs of the limited liability company as is provided in the articles of organization or a written operating agreement." O.C.G.A. § 14–11–304(b). Further, if management of the limited liability company is vested in a manager, "[n]o member, acting solely in the capacity as a member, is an agent of the limited liability company." *Id.* § 14–11–301(b)(1).

The Agreement provides for the management of the Debtor by a manager. Agreement, ¶ 6.01 ("The Company shall be managed by its manager (the 'Manager')."). Under the Agreement, the manager must have the approval of a majority in interest of the members to file a bankruptcy petition on behalf of the Debtor. Agreement, ¶ 6.03. The authorization signed by Welch and Hunt authorized Hunt, as the manager, to file the Debtor's petition. Accordingly, under the Agreement and Georgia law, only the manager, with the approval of a majority in interest of the members, could have signed and filed a bankruptcy petition on behalf of the Debtor.

The Agreement designates Hunt as the Debtor's manager, but also provides that the manager shall cease to be the manager upon the occurrence of a "Bankruptcy Event." [2] Agreement, ¶¶ 6.04–6.05. Therefore, setting aside the issue of whether the petition was properly authorized by the members, the signing of the petition by Hunt, purportedly in his capacity as "manager," was not proper, given the fact that his personal bankruptcy filing

---

such exception would not apply in this case, as the parties seeking dismissal had no authority to file the petition in the first instance. *See In re Reliable Air, Inc.,* Case No. 05–85627–JEM, 2006 WL 3856849 (Bankr. N.D.Ga. Mar. 9, 2007) (Massey, J.).

**2.** Although Paragraph 6.05 states "Bankruptcy Event" is defined in "Section 7.7", the Agreement contains no Section 7.7, and the Court has located no other definition of "Bankruptcy Event." Nonetheless, given the definition of "Bankruptcy" in Article 1 of the Agreement, the Court concludes that the personal, voluntary bankruptcy filing of the manager would constitute a Bankruptcy Event for purposes of Paragraph 6.05.

automatically removed him as the manager.

In its response to the United States Trustee's motion to dismiss, the Debtor asserts that, following the bankruptcy filing, Welch, as the sole remaining member, reappointed Hunt as the manager. It is not clear that such a reappointment would be permissible under the Agreement. Even if it were, the Court cannot find that Welch reappointed Hunt as the manager. Hunt testified that, even after the filing of his personal bankruptcy petition, he believed he had always remained a member and the manager of the Debtor. If this was so, there would have been no logical reason for Welch to reappoint Hunt as the Debtor's manager. In the absence of any other evidence to support this reappointment, the Court finds that it did not occur. Hunt ceased to be the manager upon his bankruptcy filing and no new manager was ever formally designated as provided for in Paragraph 6.05 of the Agreement.

■ While the Court need not reach this issue in order to determine that the bankruptcy case was not properly filed and must be dismissed, the Court is also inclined to agree with the United States Trustee's position that the petition was not properly authorized because Howell acquired Hunt's entire membership interest in the Debtor, including the right to vote, and Howell never approved the filing of the Debtor's petition. Under Georgia law, an interest in a limited liability company is personal property. O.C.G.A. § 14–11–501(b). Such an interest passes from the holder to the bankruptcy estate upon the commencement of a bankruptcy case. *See* 11 U.S.C. § 541(a)(1) (the bankruptcy estate is comprise of "all legal or equitable interests of the debtor in property as of the commencement of the case"). Under section 541(c)(1), "an interest of the debtor in property becomes property of the estate under subsection (a)(1) . . . of this section

notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—(A) that restricts or conditions transfer of such interest by the debtor; or (B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property." *Id.* § 541(c)(1).

Georgia law provides that, subject to contrary provisions in the operating agreement, a person ceases to be a member of a limited liability company at the time the member files a voluntary bankruptcy petition. O.C.G.A. § 14–11–601.1(b)(4). The Agreement states that the bankruptcy of a member triggers the right of the Debtor and the remaining members to purchase the bankruptcy member's interest within a certain period of time. If those options are not exercised, the provisions of Paragraph 5.03(e) and (g) shall apply. Agreement, ¶ 5.03(b). Paragraph 5.03(e) discusses the mechanism for the transfer of a withdrawing member's interest to an assignee, and Paragraph 5.03(g) discusses the requirements for admission of the transferee of a member's interest. Under these two provisions, the economic interest (*i.e.,* right to receive a distribution) of a member who files bankruptcy is considered assigned to the bankruptcy estate, while the estate's representative is admitted as a full member with the right to participate in the management of the Debtor only if the remaining members vote to approve the admission of the estate's representative. *Id.,* ¶ 5.03(g)(iv). Unless and until the transferee of the withdrawing member is admitted as a new member, the Agreement provides that the transferee is "a mere assignee," without

the ability to vote or participate in the management of the Debtor. *Id.*, ¶ 5.03(h).

Here, under state law and the terms of the Agreement, Hunt's bankruptcy filing resulted in Hunt's no longer being a member and the transfer of his membership interest to his bankruptcy estate. Under the Agreement, the Debtor and Welch, as the remaining member, had the option to purchase Hunt's membership interest, but did not exercise that option. Consequently, Hunt's membership interest remained with Hunt's bankruptcy estate. Since Welch never voted to approve the admission of Howell as a member, pursuant to the terms of the Agreement, Howell remained a "mere assignee" without the right to vote or otherwise participate in the management of the Debtor.

■ The question is whether the provisions of the Agreement and state law that require the approval of the remaining members to admit the bankruptcy estate's representative as a full member are rendered unenforceable by section 541(c)(1). If so, the membership interest should come to the bankruptcy estate without such a modification or forfeiture of the rights to vote and participate in the management of the limited liability company. The answer to this question depends, in part, on whether the operating agreement is an executory contract because such *ipso facto* provisions in executory contracts may be enforceable in certain circumstances.

Specifically, under section 365(e)(1), "notwithstanding a provision in an executory contract ... or in applicable law ..., an executory contract ... of the debtor may not be terminated or modified, any right or obligation under such contract ... may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on" the commencement of a bankruptcy case. 11 U.S.C. § 365(e)(1). Unlike the provision

in section 541(c)(1), however, section 365(e)(1) is conditioned by section 365(e)(2), which renders that section inapplicable when "applicable law excuses a party, other than the debtor, to such contract ... from accepting performance from or rendering performance to the trustee ... and such party does not consent to such assumption or assignment." *Id.* § 365(e)(2). Applicable law provides that, except as otherwise provided in the written operating agreement, "[a]n assignment entitles the assignee to share in the profits and losses and to receive the distributions to which the assignor was entitled, to the extent assigned," but does not "itself dissolve the limited liability company or entitle the assignee to participate in the management and affairs of the limited liability company or to become or exercise any rights of a member until admitted as a member pursuant to Code Section 14–11–505." O.C.G.A. § 14–11–502(2)–(3). Consequently, if the operating agreement is an executory contract, it could be argued that a trustee could not assume the operating agreement without modification because applicable state law allows the remaining members to refuse to admit the trustee as a voting member. If the operating agreement is not an executory contract, the *ipso facto* provision of section 541(c)(1) would apply to bring the membership interest, without modification, into the estate and the trustee would have the full rights of a member, notwithstanding state law and the provisions in the operating agreement that limit such participation. *See In re Ehmann,* 319 B.R. 200, 206 (Bankr.D.Ariz. 2005).

■ As to whether an operating agreement is an executory contract, courts consider whether there is "some material obligation owing to the company by the member." *In re Ehmann,* 319 B.R. 200, 204 (Bankr.D.Ariz.2005); *see also In re*

**910**

*Prebul,* 2011 WL 2947045, *7 (Bankr.E.D. Tenn. Jul. 19, 2011) ("Where the operating agreement imposes no duties or only remote and hypothetical duties, it is not an executory contract."); *In re Allentown Ambassadors, Inc.,* 361 B.R. 422, 444 (Bankr.E.D.Pa.2007) ("In this inquiry, the four corners of the parties' agreement are examined to determine whether both parties have material, unperformed obligations as of the commencement of the bankruptcy case."). "[W]here the operating agreement both requires ongoing capital contributions and imposes management duties, it has often been deemed executory." *Prebul,* 2011 WL 2947045 at *7.

The Agreement at issue here does not appear to have any outstanding, continuing obligations on the part of the members. As discussed above, the Debtor is managed by a manager, as opposed to the members. The members have no obligation to make subsequent capital contributions or to make loans to the Debtor. *See* Agreement, ¶¶ 3.02; 3.04; 3.08(b). As the Agreement is not an executory contract, regardless of what Georgia law or the Agreement might say about the rights of a "mere assignee," by virtue of section 541(c)(1), Hunt's membership interest would have fully vested in the bankruptcy estate. Any other result would be a modification of the asset in the hands of Hunt's bankruptcy estate. In such a circumstance, Howell, as the representative of the estate, would have been the proper party to vote to authorize the Debtor's bankruptcy filing, yet he did not do so.

CONCLUSION

For the reasons discussed above, the Debtor's bankruptcy petition was not properly signed by the manager of the Debtor, as required by the Debtor's operating agreement and applicable state law. Consequently, the Court finds that the Motion to Dismiss, filed by the United States

Trustee, must be, and hereby is, GRANTED. The Debtor's case is hereby DISMISSED.