### In re Derek Evins DENMAN and Marnie Danell Denman, Debtors.

SSN: XXX–XX–XXXX (h), SSN: XXX–XX–XXXX (w).

No. 14–25701–K.

United States Bankruptcy Court, W.D. Tennessee, Western Division.

Signed July 24, 2014.

Michael P. Coury, Esq., Memphis, TN, for Dr. Rack.

Bo Luxman, Esq., Christian Johnson, Esq., Memphis, TN, for Mr. Denman.

George W. Stevenson, Standing Chapter 13 Trustee, Chontele McIntyre, Esq., Memphis, TN.

Steven N. Douglass, Esq., Memphis, TN, for Opus Medical Management, LLC, Harris Shelton Hanover Walsh, PLLC.

Sean M. Haynes, Esq., Memphis, TN, Office of the United States Trustee.

## MEMORANDUM AND ORDER DENY-ING DR. MICHAEL RACK'S EMERGENCY MOTION FOR RE-LIEF FROM THE AUTOMATIC STAY COMBINED WITH NOTICE OF THE ENTRY THEREOF

DAVID S. KENNEDY, Chief Judge.

Mr. Derek Evins Denman ("Mr. Denman"), the above-named Chapter 13 debtor, owns a 70% member interest (the "Membership Interest") in Opus Medical Management, LLC, d.b.a. Reggie White Medical Enterprises (the "Opus"), a Chapter 11 debtor being administered as Case No. 14–22960–K (Bankr.W.D.Tenn.). Mr. Denman's Membership Interest is governed by an "Amended and Restated Operating Agreement of Opus Medical Management, LLC" made and adopted on July 1, 2010 (the "Operating Agreement").[1] Section 13.4, "Sale on Triggering Event," provides any member of Opus the option to purchase another member's interest in Opus at an "Agreed Value" if that member files a petition under the Bankruptcy Code. Furthermore, members have 60 days after the occurrence of a "Triggering Event," that is, filing bankruptcy, to exercise such option by written notice in accordance with the Operating Agreement.

On June 3, 2014, Mr. Denman and his wife, Marnie Danell Denman ("Mrs. Denman") filed this joint Chapter 13 case, thus, initiating a "Triggering Event" pursuant to Section 13.4 of the Operating Agreement. Therefore, by the relevant provision in the Operating Agreement, a member of Opus had 60 days from June 3, 2014, to exercise his or her option to purchase Mr. Denman's Membership Interest.

Dr. Michael Rack ("Dr. Rack"), a party in interest in this Chapter 13 case and a member of Opus (25% membership interest), filed an "Emergency Motion to Lift Automatic Stay" on July 2, 2014, well within the 60 day option period. Dr. Rack's motion seeks relief under 11 U.S.C. § 362(d)(1) to terminate or modify the automatic stay in order to allow Dr. Rack, for asserted cause, to exercise his option rights pursuant to the Operating Agreement. Mr. Denman timely objected to Dr. Rack's motion asserting that Section 13.4 of the Operating Agreement is an ipso facto clause that is invalid under either 11 U.S.C. §§ 541(c)(1)(B) or 365(e)(1). The court held a hearing on July 22, 2014, upon notice to all parties in interest to consider Dr. Rack's § 362(d)(1) motion.[2] Mr. Denman and Dr. Rack were represented by counsel at the hearing. The court now decides, first, whether Section 13.4 of the Operating Agreement is invalid under either § 365(e)(1) or § 541(c)(1)(B) and, second, whether the automatic stay statutorily imposed against Dr. Rack should be terminated or modified for cause under § 362(d)(1). The following shall constitute the court's findings of fact and conclusions of law in accordance with Fed. R. Bankr.P. 7052.

### Nature of an LLC Operating Agreement

As a preliminary matter, the court must determine which of the two statutes, § 365(e)(1) or § 541(c)(1)(B) of the Bankruptcy Code, apply to Mr. Denman's Membership Interest in Opus. Section 541(c)(1)(B) applies to interests of Mr. Denman that became property of the estate by operation of law under § 541(a)(1), (2), or (5); whereas, § 365(e)(1) applies to executory contracts. Mr. Denman asserts

---

**1.** See Exhibit 1 to docket no. 14.

**2.** By virtue of 28 U.S.C. § 157(b)(2)(G) this is a core proceeding.

that the Operating Agreement and, thereby, his Membership Interest are executory in nature and subject to the statutory provisions of § 365. Dr. Rack contrarily asserts that this Operating Agreement is not governed by § 365, but that Mr. Denman's Membership Interest is property of the estate under § 541 of the Bankruptcy Code. Interestingly but not controlling here, Mr. Denman lists his Membership Interest on his Schedule B as personal property with $0.00 amount in value and not on Schedule G as an executory contract. The court will first address whether the Operating Agreement is an executory contract governed by § 365 of the Bankruptcy Code or another type of legal instrument.

■ What constitutes an executory contract is not statutorily defined by § 365 or any other provision of the Bankruptcy Code. *See, for example, In re Terrell,* 892 F.2d 469, 471 (6th Cir.1989). The Sixth Circuit Court of Appeals has held that an executory contract as contemplated under § 365 must have "material obligations left to be performed by both parties to [a] contract." *Id.* at 472. Also, "the obligation of both the bankrupt [debtor] and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." *Id.* at 471, n. 2 (quoting the Countryman standard, Executory Contracts in Bankruptcy: Part I, 57 Minn. L.Rev. 439, 460 (1973)). Fundamentally, an executory contract must be a "contract" and not some other legal instrument.

■ Duties and obligations may arise in varying legal instruments; contracts, operating agreements, by-laws, bonds, deeds, wills, trusts, orders, warrants, options, certificates, etc. Many of these duties and obligations must be performed in the future and are, thereby, executory in nature;

however, the "executory" nature of an obligation does not, ipso facto, imply an "executory contract." Contracts are unique instruments under the law with distinct elements: offer, acceptance, adequate consideration, and mutual assent. 17A. Am. Jur.2d Contracts § 19 (2014). Contract rights arise upon an offer, acceptance, and transfer of adequate consideration between at least two assenting parties. *Id.* If these elements do not exist, a contract right does not exist and, thereby, an executory contract cannot exist.

■ Similarly, LLC operating agreements are unique instruments under the law that must accord with the respective state's LLC laws. The rights and duties of an operating agreement function akin to corporate by-laws, establishing the structure and form of an entity and arising by adoption by its members or shareholders. *See, for example, In re Garrison–Ashburn, L.C.,* 253 B.R. 700, 708–09 (Bankr.E.D.Va. 2000). A thorough review of the Tennessee Limited Liability Company Act, Tenn. Code Ann. § 48–201–101 et seq. (the "Tennessee LLC Act"), is helpful in determining the extent of the rights and obligations of an LLC operating agreement and whether such an agreement is or can be an executory contract as contemplated under § 365. The court observes the following features of the Tennessee LLC Act.

- "Any person becoming a member after an operating agreement has been adopted by the organizers or the members will be deemed to have agreed to the operating agreement." Tenn.Code Ann. § 48–206–102(a).

- "Unless otherwise provided in the articles or the operating agreement, the amendment of the operating agreement shall require the vote of members necessary to amend the articles." Note that the amendment of the operating agreement does not

necessarily require all members to agree to the amendment. TENN. CODE ANN. § 48–206–102(b).

- "One (1) or more individuals may, acting as organizers, form an LLC." TENN.CODE ANN. § 48–203–102(a).
- "[A] member or a party to a contribution agreement is obligated to the LLC to perform any enforceable promise to contribute cash or property, even if the member or a party to a contribution agreement is unable to perform because of death, disability or any other reason." TENN.CODE ANN. § 48–232–101(c).

This sample of provisions from the Tennessee LLC Act demonstrate or illustrate the uniqueness of an LLC operating agreement and distinguishes such an agreement from other types of instruments including executory contracts under § 365. It may be said that such provisions are an anathema to executory contracts.

First, as the Sixth Circuit and Countryman standards have articulated, material breach of an executory obligation in an executory contract excuses the other party's performance. Contrarily, a material breach or default of an executory obligation in a Tennessee LLC operating agreement does not excuse the other parties from making their contributions. TENN.CODE ANN. § 48–232–101(c). The members of an LLC are capitalizing an entity and not transferring consideration amongst themselves. A failure to perform under such an operating agreement ordinarily causes the non-contributing member to have his or her membership interest reduced, eliminated, subordinated, or sold.

TENN.CODE ANN. § 48–232–101(e). The performing members remain obligated to contribute despite the other member's nonperformance. The Sixth Circuit and Countryman standards are not satisfied by the Tennessee LLC operating agreements merely because members have a continuing obligation to perform despite a member's default. Here, a member's failure to complete performance constitutes a material breach or default but it does not excuse the performance of the other members.[3] In essence, the LLC obligations are unilateral obligations to the LLC and not bilateral obligations among members.

Furthermore, a Tennessee LLC operating agreement is a legal instrument that governs the membership interests and the LLC entity, itself. Formation of a Tennessee LLC entity can be done by a single individual. A single member LLC presents problems for those attempting to classify LLC operating agreements as executory contracts. Executory contracts are "contracts," and, therefore, must satisfy the elements and requirements of contract law. A single member LLC operating agreement does not have multiple members and, therefore, can satisfy neither the mutual assent element nor the exchange of consideration element of contract law. This simple problem highlights the underlying problem with considering LLC operating agreements as executory contracts because it demonstrates that LLC members are not contracting amongst themselves but instead are organizing and structuring a new entity to receive their contributions, whether cash, services to be performed, or otherwise. Applying con-

---

**3.** Compare to the Countryman standard: "a contract under which the obligations of both the bankrupt [debtor] and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." In re Jolly, 574 F.2d 349, 350–51 (6th Cir.1978) (quoting Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn.L.Rev. 439, 460 (1973)).

tract logic, the single member LLC seemingly becomes an absurdity.

A similar problem arises when considering the enforceability of an LLC operating agreement against members that were not a party to the LLC operating agreement. New members, whether by creating additional members or by a former nonmember acquiring an already existing membership interest, are "deemed" to have agreed to the operating agreement. TENN.CODE ANN. § 48–206–102(a). Again, this makes sense if the LLC operating agreement is considered a governance instrument merely defining the membership interests. However, under contract law, parties cannot be deemed to be parties to a contract without their assent. Similarly, parties to contracts must mutually assent to amendments to existing contracts; whereas, LLC operating agreements may be amended without all members approving. TENN. CODE ANN. § 48–206–102(b). Such LLC provisions undermine the privity of contract and demonstrate that LLC operating agreements are unique instruments apart from executory contracts.

Based on the foregoing, the court finds here that Tennessee LLC operating agreements are not per se executory contracts governed by § 365 of the Bankruptcy Code because of their unique elements and features under state law that are inconsistent with contract law. Such operating agreements, for example, may lack mutual assent, consideration, and privity amongst the parties. Furthermore, a member's failure to perform under an LLC operating agreement does not excuse the other members' performance under the LLC operating agreement, which contradicts the Sixth Circuit and Countryman standards for executory contracts. Tennessee LLC operating agreements cannot satisfy the Sixth Circuit and Countryman standards for executory contracts, and, thus, Tennessee LLC operating agreements are not executory contracts as contemplated under § 365 of the Bankruptcy Code.

The court is aware that its standard here is contrary to the standard applied in some other cases. For example, a court in the Eastern District of Virginia held that there is no "per se rule" for determining whether an LLC operating agreement is an executory contract under the Bankruptcy Code and that each agreement must be analyzed separately. *In re Tsiaoushis,* 383 B.R. 616, 620 (Bankr.E.D.Va.2007). Though the overwhelming majority of cases have determined LLC agreements are not executory contracts upon examination,[4] at least three courts here found that LLC agreements were, indeed, executory contracts. *In re Daugherty Construction, Inc.,* 188 B.R. 607 (Bankr.D.Neb.1995); *In re DeLuca,* 194 B.R. 65 (Bankr.E.D.Va. 1996); *In re Allentown Ambassadors, Inc.,* 361 B.R. 422 (Bankr.E.D.Pa.2007).

In reviewing these cases, the court believes there may have been some confusion or difference of opinion as to the obligations, duties, and rights that existed under an LLC operating agreement. These courts determined that the existence of "executory obligations" that could be "breached" caused the agreements detailing these obligations to be executory contracts. However, these courts arguably failed to consider that executory obligations can arise under numerous types of

---

4. *See, e.g., In re Ehmann,* 319 B.R. 200 (Bankr.D.Ariz.2005); *In re Garrison–Ashburn, L.C.,* 253 B.R. 700 (Bankr.E.D.Va.2000); *In re Capital Acquisitions & Management Corp.,* 341 B.R. 632 (Bankr.N.D.Ill.2006); *In re Tsiaoushis,* 383 B.R. 616 (Bankr.E.D.Va. 2007); *In re Warner,* 480 B.R. 641 (Bankr. N.D.W.Va.2012); *In re Prebul,* 2011 WL 2947045 (Bankr.E.D.Tenn.2011); and *In re Alameda Investments, LLC,* 2013 WL 3216129 (Bankr.C.D.Cal.2013).

726

legal instruments and not just ordinary contracts. Also, the executory obligations and hypothetical breaches discussed therein were not subject to ordinary contract law but rather to the LLC entity laws of their respective states. Unilateral executory obligations like those found in operating agreements are not executory contractual obligations under either the Sixth Circuit standard or the Countryman standard. These standards require bilateral future obligations and not merely unilateral obligations to contribute to the LLC entity. Furthermore, a member's breach or default of its duties and obligations under an LLC operating agreement does not necessarily excuse the future performance of other members. To qualify as an executory contract, the breach must excuse the other parties' future performance as discussed in the Countryman standard. These three courts apparently failed to fully consider that an LLC operating agreement is a distinct legal instrument apart from contract instruments.

The court has extensively reviewed the Operating Agreement of this case and now finds that it is not an executory contract as contemplated and governed by § 365 of the Bankruptcy Code. As the title of the Operating Agreement indicates, this agreement is meant to operate Opus, a separate legal entity from its members. The Operating Agreement establishes rights and duties attached to the Membership Interests. The members were required to make an "Initial Contribution" under Section 6.1 of the Operating Agreement to capitalize Opus. No other material member obligations appear to exist under this Operating Agreement. The Operating Agreement here is a Tennessee LLC operating agreement subject to the Tennessee LLC Act. The Operating Agreement is a legal instrument that defines the membership interests and rights that each member

holds in Opus. These membership interests are personal property of the individual members analogous to shares of corporate securities. Mr. Denman's Membership Interest became property of the § 541(a) estate upon the filing of his Chapter 13 petition. 11 U.S.C. § 541(a). In conclusion, the LLC operating agreement here is not an executory contract and is more appropriately classified as a business formation and governance instrument; therefore, the Opus Operating Agreement here is not an executory contract under § 365, however, Mr. Denman's Membership Interest is § 541 property of the estate.

### Section 541(c)(1)(B)

Since Mr. Denman's Membership Interest here is not an executory contract, section 365(e)(1) is inapplicable in this case. The court now proceeds to interpret § 541(c)(1)(B) and determine its application, if at all, to Section 13.4 of the Operating Agreement. Section 541(c)(1)(B) provides:

> ... an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

Mr. Denman additionally asserts that § 541(c)(1)(B) invalidates Section 13.4 of the Operating Agreement because it "effects or gives an option to effect a forfeiture, modification, or termination of the

debtor's interest in property." Dr. Rack essentially seeks to exercise his option and force the bankruptcy estate to sell Mr. Denman's Membership Interest to him for $10,000. Dr. Rack's option only vested, if at all, when Mr. Denman filed for Chapter 13 relief; the option did not vest prior to the filing of this Chapter 13 case.

 Ipso facto means "by the fact itself," and ipso facto clauses in agreements specify the consequences that arise by the fact of a bankruptcy filing itself and not by normal operation of the agreement. *See Black's Law Dictionary* 846 (8th ed. 2004). Congress sought to "invalidate restrictions on the transfer of property of the debtor, in order that all the interests of the debtor in property will become property of the estate." *In re Warner,* 480 B.R. 641, 655 (Bankr.N.D.W.Va.2012) (quoting H.R.Rep. No. 595, 95th Cong. 1st Sess. 368–69 (1977), 1978 U.S.C.C.A.N. 5963, 6323–25).

> [I]t is well-established that ipso facto clauses are unenforceable as a matter of law under the Bankruptcy Code. This is because the whole purpose of filing for bankruptcy is to provide the debtor with a 'fresh start,' and enforcement of ipso facto clauses would punish debtors by negating this central purpose.... Section 541(c) provides that, despite a[ ] provision between the parties to the contrary, a debtor's interest becomes property of the bankruptcy estate upon the filing of a bankruptcy petition and the debtor does not lose the property due to its bankruptcy petition.

*In re W.R. Grace & Co.,* 475 B.R. 34, 152–53 (D.Del.2012).

 Section 13.1 of the Operating Agreement is an ipso facto clause because it creates a right that occurs only upon the triggering event of a member's bankruptcy filing. This section arguably gives a non-filing member the optional right to pur-chase the bankruptcy debtor member's membership interest from the bankruptcy estate pursuant to the Operating Agreement. Essentially, the bankruptcy estate never gains control over a debtor's membership interest because a non-filing member has the option to remove it from the bankruptcy estate without the bankruptcy estate's authorization or approval. This option triggered by the filing of a bankruptcy petition is "precisely the type of 'modification' or 'forfeiture' that § 541(c)(1)(B) was intended [by Congress] to prevent." *In re Cutler,* 165 B.R. 275, 279 (Bankr.D.Ariz.1994); *In re Warner,* 480 B.R. 641 (Bankr.N.D.W.Va.2012); *In re Ehmann,* 319 B.R. 200 (Bankr.D.Ariz. 2005). Here, § 541(c)(1)(B), in essence, invalidates Section 13.1 of the Operating Agreement. Dr. Rack does not have an automatic option to purchase Mr. Denman's Membership Interest and force a modification or forfeiture of the Membership Interest upon the bankruptcy estate. This result also comports with general equitable principles.

### Relief from the Automatic Stay

 Dr. Rack ultimately seeks § 362(d)(1) relief from the automatic stay to be allowed to exercise his option rights under Section 13.1 of the Operating Agreement. However, since the Dr. Rack's option rights under Section 13.1 of the Operating Agreement are, in essence, invalid under § 541(c)(1)(B) and these circumstances, relief from the automatic stay now would be futile. Dr. Rack, naked of his asserted option to purchase, cannot establish sufficient cause under a totality of the existing facts and circumstances to warrant a termination of the automatic stay under § 362(d)(1). Thus, Dr. Rack's § 362 motion is denied in full at this time.

Based on the forgoing and consideration of the entire case record as a whole, IT IS

ORDERED AND NOTICE IS HEREBY GIVEN that:

1) Section 13.1 of the Opus' Operating Agreement is invalid under § 541(c)(1)(B); and

2) Dr. Rack's instant § 362(d)(1) motion is denied.

**SO ORDERED.**